ORDERED.

**Dated:  November 15, 2022**

Jerry A. Funk
United States Bankruptcy Judge

### UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### <u>JACKSONVILLE DIVISION</u>

| | | |
|---|---|---|
| In re | ) | Case Nos.: 3:19-bk-4607-JAF through 3:19-bk-4622-JAF |
| NRP LEASE HOLDINGS, LLC, et al.,[1] | ) | |
| | | Chapter 11 |
| Debtors. | ) | |
| | | Jointly Administered Under Case No.: 3:19-bk-4607-JAF |
| _____ | ) | |

### ORDER CONFIRMING DEBTORS' AMENDED
### <u>JOINT CHAPTER 11 PLAN OF REORGANIZATION</u>

These Chapter 11 cases came before the Court upon the Debtors' Amended Joint Chapter 11 Plan of Reorganization, as amended in open Court (the "Plan").  The material pleadings relating to confirmation of the Plan include the following:

- The Plan [Docket No. 957];

---

[1]  The Federal Employer Identification Number of the Debtors are NRP Lease Holdings, LLC (27-2059649), 8333 W 21st Street N, LLC (27-2060433), 1010 N. Webb Road, LLC (27-2062783), 8350 Lyra Drive, LLC (27-2063219), 5890 Scarborough Drive, LLC (27-2059790), 10735 E. Hwy 40, LLC (27-2062982), Adventure Holdings, LLC (20-1287061), 2780 SR16, LLC (26-2453946), 2400 Sheridan Drive, LLC (86-1078288), 1600 Stratford, LLC (20-3214101), 3660 East Franklin Street, LLC (20-0077196), 1944 Beach Boulevard, LLC (56-2472270), 4825 Blanding Boulevard, LLC (20-1287152), 3311 Capital Boulevard, LLC (84-1650790), 17717 Coit Road, LLC (20-1292272) and 2590 Water Park Drive, LLC (46-0657049).

- Amended Disclosure Statement (the "Disclosure Statement") [Docket No. 958];

- Order Approving the Amended Disclosure Statement, Scheduling Confirmation Hearing and Establishing Deadlines for Filing (i) Ballots, (ii) Rule 3018(A) Motion, (iii) Administrative Expense Claims, and (iv) Objections to Confirmation of the Debtors' Amended Joint Chapter 11 Plan of Reorganization [Docket No. 989];

- Motion for Order (i) Determining Dates, Procedures and Forms Applicable to Solicitation Process, (ii) Establishing Vote Tabulation Procedures, and (iii) Establishing Objection Deadline and Scheduling Hearing to Consider Confirmation of Plan [Docket No. 812];

- Order (i) Determining Dates, Procedures and Forms Applicable to Solicitation Process, (ii) Establishing Vote Tabulation Procedures, and (iii) Establishing Objection Deadline and Scheduling Hearing to Consider Confirmation of Plan (the "Solicitation Procedures Order") [Docket No. 988];

- Notice of Hearing to Consider Confirmation of, and Deadline for Objecting to, the Amended Joint Chapter 11 Plan of Reorganization;

- Certificate of Service Regarding Solicitation Materials (Plan, Disclosure Statement, Order Approving the Amended Disclosure Statement, Scheduling Confirmation Hearing and Establishing Deadlines, Notice of Hearing to Consider Confirmation of Amended Joint Chapter 11 Plan of Reorganization, Ballot - as applicable, and Notice of Disputed Claim Status - as applicable) [Docket No. 1013];

- U.S. Small Business Administration's Objection to Confirmation of Debtors' Amended Joint Chapter 11 Plan of Reorganization [Docket No. 1059];

- Harvest Small Business Finance, LLC's Objection to Confirmation of Debtors' Amended Joint Chapter 11 Plan of Reorganization [Docket No. 1058];

- Debtors' Response to Objections to Confirmation of Debtors' Amended Joint Chapter 11 Plan of Reorganization [Docket No. 1062];

- U.S. Trustee's Objection to Confirmation of Debtors' Amended Joint Chapter 11 Plan of Reorganization [Docket No. 1056];

- Motion to Confirm Plan Pursuant to 11 U.S.C. § 1129(b) Regarding Treatment of Class 5 – Capital Merchant Services, LLC [Docket No. 1064];

- Motion to Confirm Plan Pursuant to 11 U.S.C. § 1129(b) Regarding Treatment of Class 6 – Kash Capital [Docket No. 1065];

- Motion to Confirm Plan Pursuant to 11 U.S.C. § 1129(b) Regarding Treatment of Class 8 – Green Capital Funding, LLC [Docket No. 1068];

- Motion to Confirm Plan Pursuant to 11 U.S.C. § 1129(b) Regarding Treatment of Class 9 – Forward Financing, LLC [Docket No. 1067];

- Motion to Confirm Plan Pursuant to 11 U.S.C. § 1129(b) Regarding Treatment of Class 11 – Ace Funding Source, LLC [Docket No. 1066];

- Consent Order Granting Motion to Determine Secured Status and/or Value Collateral Securing Claim of Ace Funding Source [Docket No. 1072];

- Consent Order Sustaining Objection to Claim Nos. 10, 8, 15, 30 and 31 of Ace Funding Source [Docket No. 1073];

- Order Sustaining Objection to Claim Nos. 29, 30, 17, 10, 13, 14, 15, 9 and 14 of Kash Capital [Docket No. 1074];

- Order Granting Motion to Determine Secured Status and/or Value Collateral Securing Claim of Kash Capital [Docket No. 1075];

- Order Granting Motion to Determine Secured Status and/or Value Collateral Securing Claim of Green Capital Funding, LLC [Docket No. 1076];

- Order Sustaining Objection to Claim Nos. 27, 28, 8, 11, 8, 12, 13, 12, 7, 12 of Green Capital Funding, LLC [Docket No. 1077];

- Order Sustaining Objection to Claim Nos. 28, 29, 16, 10, 9, 9, 12, 13, 14, 13, 8 and 13 of Capital Merchant Services, LLC [Docket No. 1097];

- Order Granting Motion to Determine Secured Status and/or Value Collateral Securing Claim of Capital Merchant Services, LLC [Docket No. 1098];

- Ballot Tabulation [Docket No. 1060]; and

- Declaration of Henry P. Woodburn in Support of Confirmation of Amended Joint Chapter 11 Plan of Reorganization [Docket No. 1054].

A hearing to consider confirmation of the Plan was held on November 9, 2022 (the "Confirmation Hearing"). Upon the evidence and argument presented, the Court makes the following findings:

A.    <u>Jurisdiction and Venue</u>. This Court has jurisdiction over this Chapter 11 Case pursuant to §§ 157 and 1334 of Title 28 of the United States Code. Venue is proper pursuant to §§ 1408 and 1409 of Title 28 of the United States Code. Confirmation of the Plan is a core proceeding pursuant to § 157(b)(2)(L) of Title 28 of the United States Code, and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.    <u>Commencement and Administration of the Chapter 11 Case</u>. The Debtors commenced these administratively consolidated Chapter 11 Cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on December 5, 2019. The Debtors have since operated their businesses and managed their property as Debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed. The Debtors were and are qualified to be a Debtors under § 109 of the Bankruptcy Code.

C.    <u>Judicial Notice</u>. The Court takes judicial notice of (and deems admitted into evidence for confirmation of the Plan) the docket of the Chapter 11 Cases, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered or advanced at the hearings held before this Court during the pendency of the Chapter 11 Cases.

D.    <u>Adequacy of Disclosure Statement</u>. As determined in the Court's Order of September 13, 2022 [Docket No. 989], the Disclosure Statement satisfies the requirements of § 1125 of the Bankruptcy Code and contains adequate information to permit creditors

and parties in interest to make an informed decision on whether to accept or reject the Plan. The order approving the Disclosure Statement scheduled a hearing to consider confirmation of the Plan for November 9, 2022 (the "Confirmation Hearing").

E.      Solicitation Procedures Order.  On September 13, 2022, the Court entered its Solicitation Procedures Order [Docket No. 988], pursuant to which the Debtors were instructed to provide copies of (i) the Plan, (ii) the Disclosure Statement, (iii) a ballot (where appropriate), and (iv) other solicitation materials as specified in the Solicitation Procedures Order (collectively, the "Solicitation Materials") to creditors and parties in interest in the manner described in the Solicitation Procedures Order.

F.      Transmittal and Mailing of Solicitation Materials.  Thereafter, the Solicitation Materials were transmitted and served upon all interested parties in compliance with the Solicitation Procedures Order and in compliance with the Bankruptcy Rules, and such transmittal and service was adequate and sufficient.  Notice of the Confirmation Hearing and all deadlines in the Solicitation Procedures Order were given in compliance with the Bankruptcy Rules and the Solicitation Procedures Order and good and sufficient notice was given in accordance with Bankruptcy Rules 2002(b) and 3020(b)(2), and no other or further notice is required.  Votes for acceptance or rejection of the Plan were solicited in good faith, after the Court had approved the adequacy of the Disclosure Statement, and the Debtors are otherwise in compliance with Bankruptcy Code §§ 1125 and 1126 and Bankruptcy Rules 3017 and 3018.  The Debtors and their professionals have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with respect to the offering, issuance and distribution of recoveries under the Plan and therefore are not, and on account of such distribution will not be, liable at any

time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan.

G.    <u>Notice of Confirmation Hearing</u>.  Notice of the Confirmation Hearing and the solicitation of acceptances and rejections of the Plan complied with the terms of the Solicitation Procedures Order, was appropriate and satisfactory based upon the circumstances of the Debtors' Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

H.    <u>Ballot Tabulations</u>.  The procedures used to receive and tabulate ballots from the Holders of Claims in the voting Classes, as set forth in the Ballot Tabulation filed on November 3, 2022 [Docket No. 1060], were proper and appropriate and in compliance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws and regulations.

I.    <u>Solicitation in Good Faith</u>.  Based on the foregoing and the record before the Court, the Court finds that Debtors and their managers, officers, employees, financial advisors, attorneys, and other professionals and agents have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

J.    <u>Identification of Plan Proponent</u>.  As required by Bankruptcy Rule 3016(a), the Plan is dated and identifies the Plan proponent.

K.    <u>Classifications</u>.  In addition to Administrative Claims and Priority Tax Claims, which need not be classified, the Plan designates 11 Classes of Claims and Interests.[2]  The Claims and Interests placed in each Class are substantially similar to the

---

[2]  Any capitalized terms not defined herein shall have the same meaning prescribed to them in the Plan.

other Claims or Interests, as the case may be, in such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan. The classifications were not created for any improper purpose and the creation of such Classes does not unfairly discriminate between Holders of Claims and Interests. The Plan thus satisfies §§ 1122 and 1123(a)(1) of the Bankruptcy Code.

L.     <u>Designation of Impaired and Unimpaired Classes</u>. The Plan specifies that Classes 1 through 11 are Impaired under the Plan. Article VI of the Plan details the treatment of each Impaired and Unimpaired Class. Sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code are thus satisfied.

M.     <u>No Discrimination</u>. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying § 1123(a)(4) of the Bankruptcy Code.

N.     <u>Adequate Means of Implementation</u>. Pursuant to § 1123(a)(5) of the Bankruptcy Code, Article X of the Plan and various other provisions of the Plan specifically provide, in sufficient detail, adequate and proper means for the implementation of the Plan. Accordingly, the requirements of § 1123(a)(5) of the Bankruptcy Code are satisfied.

O.     <u>Appointment of Officers and Directors</u>. The Plan contemplates the continued retention of existing officers, managers, and directors of the Debtors. Section 1123(a)(7) of the Bankruptcy Code is therefore satisfied.

P.     <u>Discretionary Provisions Consistent with Bankruptcy Code</u>. The Plan does not include any discretionary provisions which are inconsistent with the Bankruptcy Code. The Debtors have therefore met the requirements of § 1123(b)(6).

Q.     Assumption and Rejection of Executory Contracts and Unexpired Leases.
In accordance with § 1123(b)(2) of the Bankruptcy Code, Article IX of the Plan provides that all executory contracts or unexpired leases that are not assumed pursuant to the Plan or have not previously expired or terminated pursuant to their own terms shall be deemed rejected.

R.     Business Justification for Assumption and Rejection of Executory Contracts and Unexpired Leases.  A reasonable business judgment has been reached with respect to the assumption of the executory contracts identified in Article IX of the Plan.  The procedures for assumption or rejection of all other executory contracts or unexpired leases as contemplated in Article IX of the Plan are based on the exercise of sound business judgment.  Each assumption or rejection of an executory contract or unexpired lease as provided in Article IX of the Plan shall be legal, valid, and binding upon the Debtors and all non-Debtors parties to such contracts, all to the same extent as if such assumption or rejection had been authorized and effectuated pursuant to an appropriate order of the Court that was entered pursuant to § 365 of the Bankruptcy Code prior to the Confirmation Date.

S.     Adequate Assurance of Future Performance of Assumed Contracts.  The Debtors have provided adequate assurance of future performance for each executory contract or unexpired lease being assumed by the Debtors.  Further, the Debtors have cured or provided adequate assurance that the Debtors will cure defaults (if any) under or relating to each of the executory contracts.  As a result, the requirements of § 365(b) of the Bankruptcy Code are satisfied.

T.     Retention of Claims and Causes of Action.  In accordance with § 1123(b)(3) of the Bankruptcy Code, Article XVI of the Plan provides that any Causes of Action that the Debtors may hold against any entity shall vest in the Debtors on the Effective Date.

Thereafter, the Debtors shall have the exclusive right, but not the obligation, to institute, prosecute, abandon, settle or compromise any Causes of Action without further order of the Court.

U.     Approval of Compromises Inherent in the Plan.  The compromises set forth in the Plan, including the substantive consolidation compromise described in Article V of the Plan and the treatment being afforded to Gel Funding, LLC and SPG Advance, LLC under Article VIII, resolve complex legal issues in a reasonable fashion, constitute proper exercises of the Debtors' business judgment, and are in the best interest of creditors and the Estate.  All settlements and compromises of Claims or Causes of Action embodied in the Plan are effective and binding on each Holder of a Claim who may have standing to assert such Claims.

V.     Specific Findings Regarding Value of Collateral Purporting to Secure the Claims Held by Classes 5 through 11.  As previously determined by this Court, the value of the collateral securing the Claims of Capital Merchant Services, LLC (Class 5), Kash Capital (Class 6), Gel Funding, LLC (Class 8), Forward Financing, LLC (Class 9), SPG Advance, LLC (Class 10), and Ace Funding Source, LLC (Class 11) is less than the amounts owed to prior lienholders.  By virtue of § 506(c) of the Bankruptcy Code, the Claims described in Classes 5 through 11, to the extent they are determined to be valid and Allowed, are found to be unsecured.

W.     Necessity of Indemnification, Exculpation, Releases and Injunctions.  The indemnification, exculpation, release and injunction provisions of the Plan represent a valid exercise of business judgment, are supported by adequate consideration, are fair, equitable and reasonable, and are consistent with §§ 105, 524(e), 1122, 1123(b)(3)(A), 1123(b)(6), 1129 and 1142 of the Bankruptcy Code.  The releases and injunctions are described in

specific and conspicuous language that satisfies Rule 3016(c), Federal Rules of Bankruptcy Procedure, and are to a large extent, contingent upon fulfillment of the Debtors' Plan obligations. The releases and injunctions are also necessary to protect the Debtors and the Estates from potential third-party claims, particularly those asserted or assertable by Capital Merchant Services, LLC, Kash Capital, Gel Funding, LLC, Forward Financing, LLC, SPG Advance, LLC and Ace Funding Source, LLC, all of whom have knowledge of these Chapter 11 cases but chose not to participate in the reorganization. The injunctions are necessary to prevent those creditors in particular from contending that their Claims were unaffected by the Chapter 11 proceedings. The Plan was also accepted by all creditors voting on the Plan without objection to the injunctions and releases. The injunctions and releases are also narrowly tailored to achieve their intended purpose of incentivizing compliance with the Plan and preventing outside interference with the Debtors' restructuring efforts.

     X.    <u>Compliance of Plan with the Bankruptcy Code</u>. The Debtors, as proponents of the Plan, have complied with the applicable provisions of the Code. Sections 1129(a)(1) and (a)(2) of the Bankruptcy Code are thus satisfied.

     Y.    <u>Plan Proposed in Good Faith</u>. The Debtors proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying § 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident from the facts and records of these cases, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in these Chapter 11 Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates for the benefit of creditors and other parties in interest.

Z.    <u>Approval of Fees and Costs</u>.  All fees and costs of the Debtors' professionals incurred in connection with the cases have been approved or are subject to bankruptcy court approval, thus satisfying § 1129(a)(4) of the Code.

AA.    <u>Identity of Officers and Directors</u>.  The Debtors have disclosed the identity, affiliation and compensation payable to all persons who will serve as officers or directors of the Debtors following confirmation.  Section 1129(a)(5)(B) of the Code is thus satisfied.

BB.    <u>Regulatory Rate Charges</u>.  The fees which Debtors charge are not subject to any governmental oversight or regulation.  Section 1129(a)(6) of the Code is not therefore implicated.

CC.    <u>Best Interest of Creditors and Interest Holders</u>.  The liquidation analysis provided in the Disclosure Statement is persuasive, accurate and credible, is based upon reasonable and sound assumptions, has not been controverted by other evidence, and establishes that each Holder of an Impaired Claim or Membership Interest will receive or retain under the Plan, on account of such Claim or Membership Interest, property of a value as of the Effective Date that is not less than the amount that such Holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.  Section 1129(a)(7) of the Bankruptcy Code is thus satisfied.

DD.    <u>Classification</u>.  The Plan complies with the applicable provisions of Chapter 11 of the Code.  Among other things, each Class of creditors is separately classified as required by 11 U.S.C. § 1122.  The Plan also permits Secured Creditors holding Allowed Claims to participate in a distribution to Unsecured Creditors for any deficiency Claims.  The Plan thus satisfies the requirements of 11 U.S.C. § 1129(a)(7).

EE.    <u>Acceptance of Plan</u>.  The Plan was not accepted by all Classes.  The Plan does not therefore satisfy § 1129(a)(8) of the Code.  As set forth below, however, the Plan

is fair and equitable with respect to the dissenting or non-voting Classes and may nonetheless be confirmed pursuant to 11 U.S.C. § 1129(b).

FF.    <u>Payment of Administrative and Priority Claims</u>.  The Plan provides for the payment of all Administrative Claims in full, or as otherwise agreed between Debtors and the Administrative Claim Holder (as that term is defined in the Plan).  Similarly, the Plan provides for the payment of all Priority Tax Claims in full within sixty (60) months of the Petition Date.  Section 1129(a)(9) of the Code is satisfied as to those Claims.

GG.    <u>Treatment of PPP Loans</u>.  During the course of the reorganization, Debtors received $1,696,761 in funding (the "PPP Loans") from Harvest Small Business Finance, LLC ("Harvest") under the provisions of the Payroll Protection Program ("PPP") established by the Coronavirus Aid, Relief, and Economic Security (CARES) Act, P.L. 116-136 (the "CARES Act"), which loans were granted administrative expense status pursuant to Court order dated July 2, 2020 [Docket No. 202].  Each PPP Loan is documented with a promissory note (the "Notes").  The Debtors have applied for forgiveness of the PPP Loans and are awaiting a final decision from the United States Small Business Administration (the "SBA") regarding the request.

The Plan presently provides that, in the event the PPP Loans are not forgiven, the Chapter 11 Cases for 8350 Lyra Drive, LLC and 2590 Water Park Drive, LLC will be dismissed with the SBA being entitled to collect the PPP Loans made to those entities from their assets solely, with the balance of the PPP Loans ($1,354,763 in total) being paid in sixty (60) monthly installments of $23,157.98 each, which payment includes 1% interest in accordance with the provisions of the Paychecks Protection Flexibility Act of 2020, P.L. 116-142.

Harvest and the SBA have argued that the PPP Loans must be paid in full at confirmation pursuant to § 1129(a)(9) of the Bankruptcy Code. The Debtors do not agree, arguing that they are entitled to repay the PPP Loans over a five (5) year period. In order to resolve the issue and achieve confirmation, by Final Order, the Debtors, Harvest and the SBA have agreed that, in the event the PPP Loans are not forgiven, the entirety of the PPP Loans ($1,696,761) shall be repaid in accordance with the terms of the Notes for the PPP Loans. In the event the SBA's Office of Hearings and Appeals ("OHA") denies forgiveness of the PPP Loans, repayments shall commence on the first day of the next month according to the terms of the Notes, subject to the Debtors' rights to seek further deferment pending judicial review of the OHA's decision. Any rights of the Debtors to challenge or appeal the SBA's forgiveness determination under applicable non-bankruptcy law and any claims and defenses of Harvest and the SBA related to the PPP Loans are expressly reserved. Notwithstanding the decretal paragraph 6 of this Order (titled "Substantive Consolidation Compromise") and notwithstanding any language to the contrary in the Plan, the Notes shall remain intact, enforceable solely against the applicable Debtor, and no successors or assigns, including but not limited to the reorganized Debtor(s) are relieved of such obligations until the Notes are forgiven or paid. The Plan shall be deemed so modified.

HH. <u>Acceptance of Plan by at Least One Class of Impaired Creditors</u>. The Plan was accepted by Classes 4, 7, 10 and 12. Section 1129(a)(10) of the Code requiring the acceptance of the Plan by at least one class of impaired Claims is thus satisfied.

II. <u>Feasibility</u>. The Debtors have accumulated sufficient cash to fund the initial distributions under the Plan. The Debtors' projected income is sufficient to maintain operations and fund the remaining Plan obligations. The Court thus finds that the Plan is

feasible, and confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the reorganized Debtors.  Section 1129(a)(11) is satisfied.

JJ.    <u>U.S. Trustee Fees</u>.  All fees payable under 28 U.S.C. § 1930 have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan. Section 1129(a)(12) is satisfied.

KK.    <u>Retiree Benefits</u>.  The Debtors does not maintain a retirement plan.  Section 1129(a)(13) of the Code is therefore inapplicable.

LL.    <u>Domestic Support Obligations</u>.  The Debtors are under no obligation to pay domestic support obligations.  Section 1129(a)(14) of the Code is not therefore applicable.

MM.    <u>Inapplicability of § 1129(a)(15)</u>.  The Debtors are not individuals.  Section 1129(a)(15) is not therefore implicated.

NN.    <u>Transfer Approvals Under Non-Bankruptcy Law</u>.  No transfers of property are contemplated by the Plan.  Section 1129(a)(16) of the Code is not therefore implicated.

OO.    <u>Plan Modifications</u>.  At the Confirmation Hearing, the Debtors made two additional Plan modifications (the "Plan Amendments"), to wit:

    a.    The interest rate payable on Live Oak Bank's Class 1 and Class 2 Claims was increased from 4.5% to 5%; and

    b.    Class 3 was eliminated as a result of the secured indebtedness owed to American Express having been previously satisfied.

The Plan Amendments are appropriate, do not impact feasibility, do not materially impact other creditors or parties in interest, and do not require re-solicitation of acceptances or rejections to the Plan.  The Plan Amendments are therefore approved.

PP.    Compliance with § 1129(b) with Respect to Dissenting Impaired Classes.

The Plan may thus be confirmed pursuant to § 1129(b)(2)(A) of the Code notwithstanding

the non-acceptance of the Plan by Classes 5, 6, 8, 9 and 11.   The Court notes that the

Holders of Claims in these classes are lenders who routinely extend credit to distressed

businesses at exorbitant interest rates.   These creditors, routinely referred to throughout the

Chapter 11 Cases as the "MCA Lenders," have had multiple opportunities to be heard in

connection with these Chapter 11 Cases, but have failed or refused to participate.   The

Claims in these Classes have, however, been properly extinguished through the Claims

objection process.   As a result, the creditors addressed in Classes 5, 6, 8, 9 and 11 do not

hold Allowed Secured or Unsecured Claims against the Estates.   The Plan does not

therefore discriminate unfairly, and is fair and equitable, with respect to the non-voting

classes and may be confirmed pursuant to § 1129(b) of the Bankruptcy Code.

QQ.    Only One Plan.   Other than the Plan, no other Plan has been filed in this

Chapter 11 Case.   Section 1129(c) of the Bankruptcy Code is thus satisfied.

RR.    Plan Purpose.   The principal purpose of the Plan is not the avoidance of

taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.   Section

1129(d) of the Bankruptcy Code is not therefore implicated.

It is therefore ORDERED:

1.    Cramdown Motions.   The Debtors' "cramdown" motions [Docket Nos.

1064, 1065, 1066, 1067 and 1068] are granted.

2.    Confirmation of Plan.   The Plan, a copy of which is attached as **Exhibit A**,

as modified in open Court (see paragraphs FF, GG and NN above), is confirmed.

3.    Objections.   All parties have had a full and fair opportunity to litigate all

issues raised, or that might have been raised, in connection with the confirmation of the

Plan, and any and all comments thereto have been considered by the Court.  All objections that have not been withdrawn, waived, or settled, and all reservations of rights pertaining to confirmation of the Plan included therein, are overruled on the merits for the reasons stated on the record of the Confirmation Hearing.

4.      Incorporation of Plan Documents.  The terms of the Plan and the exhibits thereto (including any non-material amendments, modifications, or supplements thereof at any time before the Effective Date), are incorporated by reference into and are an integral part of the Plan and this Order. Each term, as it may have been altered or interpreted in accordance with this Order, is valid and enforceable pursuant to its terms.

5.      Findings of Fact and Conclusions of Law.  The findings of fact and the conclusions of law set forth herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation of the Plan are hereby incorporated herein to the extent not inconsistent herewith.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

6.      Plan Classification Controlling.  The classifications of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.

7.      Substantive Consolidation Compromise.  The substantive consolidation compromise described in Article V of the Plan is approved.  In accordance with said compromise, (a) all property of the Estate of each Debtor shall be deemed to be property

of the consolidated Estates; (b) all Claims against each Estate shall be deemed to be Claims against the consolidated Estates, any Proof of Claim filed against one or more of the Debtors shall be deemed to be a single Claim filed against the consolidated Estates, and all duplicate Proofs of Claim for the same Claim filed against more than one Debtor shall be deemed expunged; (c) the distribution schedule attached hereto as **Exhibit B** for Class 12 General Unsecured Creditors is approved with the Debtors retaining the right to make non-material adjustments thereto as they deem necessary and appropriate without further Court approval; and (d) except as otherwise provided in the Plan, no distributions under the Plan shall be made on account of intercompany Claims.  In the event one or more of the Debtors' Chapter 11 Cases are converted to Chapter 7 or dismissed, creditors holding Claims against the converted or dismissed Estate solely shall receive no distribution pursuant to this Plan and shall have no rights to payment from the other Debtors.  The Plan shall not result in the merger or otherwise affect the separate legal existence of each Debtor, other than with respect to distribution rights under the Plan, and shall not be deemed to create joint liability of the Debtors for any injuries to persons or property occurring on the premises of any individual park.  The compromise Plan structure shall also not (a) affect valid, enforceable, and unavoidable Liens that would not otherwise be terminated under the Plan, except for Liens that secure a Claim that is eliminated by virtue of the Plan structure and Liens against collateral that are extinguished by virtue of such Plan structure; (b) have the effect of creating a Claim in a Class different from the Class in which a Claim would have been placed in the absence of such structure; or (c) affect the obligation of each of the Reorganized Debtors, pursuant to Section 1930 of Title 28 of the United States Code, to pay quarterly fees to the Office of the United States Trustee until such time as each particular Debtor's case is closed.

8.    <u>Binding Effect</u>.  Under § 1141 of the Bankruptcy Code, effective as of the

Confirmation Date, but subject to the occurrence of the Effective Date, and except as

expressly provided in the Plan or this Order, the provisions of the Plan (including the

exhibits to, and all documents and agreements executed under, pursuant to, or in

contemplation of the Plan) and this Order shall be binding on (i) the Debtor, (ii) all Holders

of Claims against and Interests in the Debtor, whether or not such Holders of Claims or

Interests filed proofs of Claim in the Chapter 11 Cases, whether or not such Claims or

Interests are Impaired under the Plan, and whether or not, if Impaired, such Holders

accepted, rejected, or are deemed to have accepted or rejected the Plan, (iii) all non-Debtor

parties to executory contracts and unexpired leases with the Debtor, (iv) all entities that are

parties to or are subject to the settlements, compromises, releases, discharges, and

injunctions described in the Plan or herein, (v) every other party in interest in the Chapter

11 Cases, (vi) all creditors and parties in interest that received notice of the Chapter 11

Cases or the Confirmation Hearing, including the MCA Lenders, regardless of whether

they have actively participated in these Chapter 11 Cases, and (vii) each of the foregoing's

respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers,

directors, attorneys, agents, representatives, beneficiaries, or guardians, if any.

9.    <u>Extinguishment of Liens</u>.  The Plan contemplates the extinguishment of the

liens held by the creditors identified in Classes 5 through 11 of the Plan, and by this Order,

such liens are hereby deemed extinguished, expunged and of no further effect.  Pursuant to

§ 1142 of the Code and Article VIII of the Plan, the creditors in Classes 5 through 11 of

the Plan shall, within twenty (20) days of the Effective Date, execute and deliver, in

recordable form, a satisfaction, release or discharge of their security interest in or lien on

the Debtors' property.  The Debtors are hereby authorized to file UCC-3 termination

statements with respect to such liens should the claimants fail to deliver the appropriate lien releases.

10.    <u>Approval of Assumption and Rejection of Remaining Executory Contracts and Unexpired Leases</u>.   By separate order, the Court has approved the assumption or conditional assumption of the Executory Contracts and Unexpired Leases to be assumed under the Plan as of the Effective Date pursuant to §§ 365 and 1123 of the Bankruptcy Code.  All other executory contracts and unexpired leases to which the Debtors are a party are hereby rejected as of the Effective Date except for an executory contract or unexpired lease that (i) previously has been assumed pursuant to a Final Order of this Court, (ii) is specifically designated as an executory contract or unexpired lease to be assumed in the Plan, including, without limitation, all Transferred Contracts, or (iii) is the subject of a separate assumption motion filed by the Debtors under § 365 of the Bankruptcy Code prior to the Effective Date.  Nothing in the Plan will increase, augment, diminish or add to any of the duties, obligations, responsibilities or liabilities of the Debtors under any executory contract or unexpired lease.

11.    <u>Effect of Assumption; Expungement of Cure Related Claims</u>.  Assumption of any executory contract or unexpired lease pursuant to the Plan or otherwise shall result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time prior to the Effective Date of assumption.  Any Claim listed in the Schedules and any Proofs of Claim filed with respect to any executory contract or unexpired lease that has been assumed prior to the Effective

Date shall be deemed disallowed and expunged, without further notice to or action, order, or approval of this Court or any other Entity.

12.     Business Judgment.  A reasonable business judgment has been reached with respect to whether to assume or reject each of the executory contracts and unexpired leases as set forth Article IX of the Plan.  Each assumption and rejection of an executory contract or unexpired lease as provided in Article IX of the Plan shall be legal, valid, and binding upon the Debtors and all non-Debtor parties to such contracts, all to the same extent as if such assumption or rejection had been authorized and effectuated pursuant to an appropriate order of the Court that was entered pursuant to § 365 of the Bankruptcy Code prior to the Confirmation Date.

13.     Adequate Assurance of Future Performance.  The Debtors have provided adequate assurance of their future performance for each Assumed Contract.  As a result, the requirements of § 365(f) of the Bankruptcy Code are satisfied.

14.     Corporate Governance.  Under § 1129(a)(5)(A)(ii) of the Bankruptcy Code, the Court approves the continued employment of the individuals designated as officers or directors of the Debtors as being consistent with the interests of Holders of Claims and Interests and with public policy; provided, however, that nothing set forth herein shall prevent any of the foregoing individuals from resigning as an officer or director without further order of the Court.  The directors, officers and employees of the Debtor shall continue to have the benefit of any and all directors' and officers' liability insurance policies that may be in effect.

15.     Post-Confirmation Transactions.  Following confirmation, the Debtors shall be entitled to purchase or sell property, compromise claims, incur debt or engage in any

investment or business activity which they deem appropriate without the necessity of obtaining Bankruptcy Court approval or modification of the Plan.

16.      <u>Insurance Policies</u>.  Confirmation of the Plan does not invalidate, terminate or reject any insurance policy, whether pre-petition or post-petition, of the Debtors, and all such policies remain in effect under their terms.

17.      <u>Contested Matters</u>.  All persons or entities which are parties to adversary proceedings or contested matters pending before this Court which are not finally determined as of the date of this Order are restrained and enjoined from commencing any other proceedings or taking any other action against the Debtors with respect to any issue raised in such adversary proceedings or contested matter, except upon further order of this Court.

18.      <u>Extinguishment of Prepetition Claims</u>.  Except as otherwise expressly provided for in the Plan or in obligations (including any documents evidencing such obligations) issued pursuant to the Plan, the rights afforded in the Plan and the treatment of all Claims in the Plan shall be in exchange for and in complete satisfaction of Claims of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtors or any of their assets or properties.  On the Effective Date, all such Claims against the Debtors shall be deemed satisfied and released in full, subject to the treatment provided for such Claims in the Plan.

19.      <u>Injunctions and Automatic Stay</u>.  Unless otherwise provided in the Plan or herein, all injunctions or stays in effect in the Chapter 11 Case pursuant to §§ 105, 362, or 525 of the Bankruptcy Code or otherwise, or any order of the Court, and extant on the date of this Confirmation Order (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date. This

Confirmation Order will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, Interests, Causes of Action, obligations, suits, judgments, damages, demands, debts, rights, or liabilities released pursuant to the Plan.

20.     <u>Third Party Injunctions</u>.  Except as otherwise expressly provided for in the Plan or in obligations  issued pursuant to the Plan (including any documents evidencing such obligations), from and after the Effective Date, all entities are permanently enjoined from commencing or continuing in any manner against the Debtors, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, cause of action, interest or remedy released or to be released, exculpated, or to be exculpated, pursuant to the Plan. Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan (including any documents evidencing such obligations), from and after the Effective Date, all entities shall be precluded from asserting against the Debtors or their successors and assigns and their assets and properties any other Claims based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.  Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan (including any documents evidencing such obligations), the rights afforded in the Plan and the treatment of all claims in the Plan shall be in exchange for and in complete satisfaction of Claims of any nature whatsoever, including any interest accrued on Claims from and after the petition date, against the Debtors or the releasees or any of their assets or properties.  The prosecution or collection of any Claims against any guarantor of the Debtors' indebtedness are hereby enjoined and stayed until such time as the Debtors have defaulted in their payment

obligations under the Plan.  Any statute of limitations for enforcement of any claims against the guarantors of the Debtors' indebtedness shall be tolled during the pendency of this injunction.  All guarantees of the Debtors' indebtedness shall be deemed satisfied and extinguished upon completion of the Debtors' obligations to the particular creditor or class of creditors under the Plan.

21.    <u>Exculpation</u>.    Notwithstanding anything contained in the Plan to the contrary, the Releasees shall neither have nor incur any liability to any person or Entity for any and all Claims and Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, approving, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with this Plan or any other act taken after the Petition Date or omitted to be taken in connection with or in contemplation of the transactions occurring in the Chapter 11 Cases; provided, however, that the foregoing provisions shall have no effect on the liability of any Releasee that results from any act or omission that is determined in a Final Order to be solely due to such Releasee's own gross negligence or willful misconduct.

22.    <u>Provisions Regarding United States</u>.  Nothing in this Order, the Plan, or any other implementing or supplementing Plan documents (collectively, the foregoing are referred to as the "Plan Documents") discharges, releases, precludes, or enjoins: (i) any liability to the United States that is not a Claim; (ii) any Claim of the United States arising on or after the Confirmation Hearing; (iii) any liability of any entity or person under police or regulatory statutes or regulations to the United States as the owner or operator of property or rights to property that such entity owns or operates after the Confirmation

Hearing; and (iv) any liability to a Governmental Unit on the part of any non-Debtor.  Nor shall anything in the Plan Documents enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside the bankruptcy court, any liability described in the first sentence of this paragraph and nothing in the Plan Documents divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret the Plan Documents or to adjudicate any defense asserted under the Plan Documents.   Notwithstanding anything to the contrary in Plan Documents, nothing shall affect the United States' setoff and recoupment rights, or the Debtors' and/or their successor(s) and assign(s) defenses thereto.

    23.    <u>PPP Loans</u>.  Pursuant to the agreement among the Debtors, Harvest and the SBA, in the event the PPP Loans are not forgiven, the entirety of the PPP Loans ($1,696,761) shall be repaid in accordance with the terms of the Notes for the PPP Loans. In the event the OHA denies forgiveness of the PPP Loans, repayments shall commence on the first day of the next month according to the terms of the Notes, subject to the Debtors' rights to seek further deferment pending judicial review of the OHA's decision. Any rights of the Debtors to challenge or appeal the SBA's forgiveness determination under applicable non-bankruptcy law and any claims and defenses of Harvest and the SBA related to the PPP Loans are expressly reserved.  Notwithstanding the decretal paragraph 7 of this Order (titled "Substantive Consolidation Compromise") and notwithstanding any language to the contrary in the Plan, the Notes shall remain intact, enforceable solely against the applicable Debtor, and no successors or assign, including but not limited to the reorganized Debtor(s), are relieved of such obligations until the Notes are forgiven or paid. The Debtor, SBA, and Harvest agree that the treatment of the Notes set out in this paragraph, specific to the facts and circumstances of this bankruptcy, resolves Harvest's administrative claim for the PPP Loans under 11 U.S.C. § 1129(a)(9).  The Debtors need

not therefore satisfy the PPP Loans in full as a condition of confirmation, nor shall they be required to reserve funds as a condition of confirmation to later satisfy the PPP Loans.   The discharge, release, exculpation, and injunction provisions of Articles XIII, XIV, and XV of the Plan shall not apply to Harvest and the SBA with respect to the PPP Loans.

24.    <u>Claims Objections</u>.  The Debtors may file within ninety (90) days from the date hereof any objections to the allowance of any Claim.

25.    <u>Payment of U.S. Trustee Fees</u>.  The Debtors shall continue to pay quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as this Court enters a Final Decree closing these Chapter 11 Cases, or enters an order converting, dismissing or administratively closing these cases.

26.    <u>Post-Confirmation Reporting</u>.  The Debtors shall file with the Court a post-confirmation financial report or statement of disbursements for each quarter (or portion thereof) that this Chapter 11 Case remains open in a format prescribed by the United States Trustee.  The Debtors shall continue to file post-confirmation quarterly reports until entry of the Final Decree.

27.    <u>Vesting of Causes of Action</u>.  The provisions of Article XVI of the Plan are hereby approved in their entirety.  Except as otherwise provided in the Plan, on the Effective Date, all of the Debtors' rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal in an adversary proceeding or contested matter filed in these Chapter 11 Cases, will be transferred to the Reorganized Debtors in accordance with the Plan.

28.    <u>Preservation of Causes of Action</u>.  Unless a Claim or Cause of Action against a creditor or other Person is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order, the Claim or Cause of Action shall

be transferred to the Reorganized Debtors for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, Claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches will apply to such Claims or Causes of Action upon or after the confirmation or consummation of the Plan based on the Disclosure Statement, the Plan or this Confirmation Order, except where such Claims or Causes of Action have been expressly waived, relinquished, released, compromised, or settled in the Plan or a Final Order.

29.     <u>Authorization to Consummate Plan</u>.  The Debtors are authorized, ordered and instructed to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be reasonably necessary or appropriate consistent with the language of the Plan to effectuate, implement and further evidence the terms and conditions of the Plan without further Order of this Court.

30.     <u>Professional Fee Claims</u>.  Any entity or person seeking an award by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under § 503(b)(2) of the Bankruptcy Code shall file its final application for allowance of such compensation and/or reimbursement by no later than thirty (30) days after the Effective Date.

31.     <u>Cost of Enforcement</u>.  Pursuant to paragraph 19.6 of the Plan, the Debtors shall be entitled to recover all reasonable attorneys' fees and costs incurred in enforcing the Plan or this Confirmation Order.

32.     <u>Retention of Jurisdiction</u>.   This Court retains jurisdiction of these proceedings pursuant to and for the purposes of §§ 105(a) and 1127 of the Bankruptcy Code and for the following purposes:

(a)     To hear and determine any and all objections to or applications concerning the allowance, classification, priority, compromise, estimation, or payment of any Claim or Equity Interest;

(b)     To hear and determine any and all applications for payments of fees and expenses made by any Professional pursuant to §§ 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under the Bankruptcy Code, and any and all objections thereto;

(c)     To hear and determine pending applications for the rejection, the assumption, or the assumption and assignment of unexpired leases and executory contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract or Unexpired Lease;

(d)     To hear and determine any and all adversary proceedings, applications, or contested matters, including any remands or appeals;

(e)     To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or in connection with the enforcement of any remedies made available under the Plan;

(f)     To liquidate any disputed, contingent, or unliquidated Claims;

(g)     To take such action and enter such order as are necessary to remove or extinguish the liens purportedly held by Capital Merchant Services, LLC, Kash Capital, Gel Funding, LLC, Green Capital Funding, LLC, Forward Financing, LLC, SPG Advance, LLC or Ace Funding Source, LLC of record;

(h)     To ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are accomplished as provided in the Plan;

(i)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(j)     To enter and implement such orders as may be necessary or appropriate in furtherance of confirmation, implementation, or consummation of the Plan;

(k)     To enable the reorganized Debtors to prosecute any and all proceedings which may be brought to set aside liens or encumbrances and to recover any transfers, assets, properties or damages to which the Debtors or the reorganized Debtors may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws, including causes of action, controversies, disputes and conflicts between the Debtors or the reorganized Debtors and any other party, including, but not limited to, any objections to Claims, suits for avoidance and recovery of preferences or fraudulent transfers, and suits for equitable subordination of Claims;

(l)    To consider any modification of the Plan pursuant to § 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(m)    To enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan and the transactions contemplated under the Plan;

(n)    To hear and determine any other matter not inconsistent with the Bankruptcy Code and Title 28 of the United States Code that may arise in connection with or related to the Plan; and

(o)    To enter a final decree closing the Chapter 11 Cases.

33.    <u>Modification of Plan and Plan Documents</u>.  Without the need for a further order or authorization of this Court, but subject to the express provisions of this Order, the Debtors shall be authorized and empowered to make non-material modifications to the documents filed with the Court, including the documents forming part of the evidentiary record at the Confirmation Hearing, in their reasonable business judgment as may be necessary.  Further, following entry of this Order, the Debtors shall be authorized upon further order of the Bankruptcy Court, to alter, amend, or modify the Plan in accordance with § 1127(b) of the Bankruptcy Code, or to remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

34.    <u>Applicable Law</u>.  Unless a rule of law or procedure is supplied by federal law (including Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the law of the State of Florida, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan and any agreements or documents executed or cited into in connection with the Plan.

35.    <u>Final Order</u>.  This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

Richard R. Thames, Esq. is directed to serve copies of the foregoing to all creditors and parties in interest within 3 days of the entry of this Order.

Exhibit "A"

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## <u>JACKSONVILLE DIVISION</u>

| | | |
|---|---|---|
| In re | ) | Case Nos.: 3:19-bk-4607-JAF through |
| | | 3:19-bk-4622-JAF |
| NRP LEASE HOLDINGS, LLC, et al.,[1] | ) | |
| | | Chapter 11 |
| Debtors. | ) | |
| | | Jointly Administered Under |
| _____ | ) | Case No.: 3:19-bk-4607-JAF |


## <u>AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION</u>


Richard R. Thames, Esq.
**THAMES | MARKEY**
50 North Laura Street, Suite 1600
Jacksonville, Florida 32202
(904) 358-4000
(904) 358-4001 (Facsimile)

Attorneys for the Debtors

---

[1]   The Federal Employer Identification Number of the Debtors are NRP Lease Holdings, LLC (27-2059649), 8333 W 21st Street N, LLC (27-2060433), 1010 N. Webb Road, LLC (27-2062783), 8350 Lyra Drive, LLC (27-2063219), 5890 Scarborough Drive, LLC (27-2059790), 10735 E. Hwy 40, LLC (27-2062982), Adventure Holdings, LLC (20-1287061), 2780 SR16, LLC (26-2453946), 2400 Sheridan Drive, LLC (86-1078288), 1600 Stratford, LLC (20-3214101), 3660 East Franklin Street, LLC (20-0077196), 1944 Beach Boulevard, LLC (56-2472270), 4825 Blanding Boulevard, LLC (20-1287152), 3311 Capital Boulevard, LLC (84-1650790), 17717 Coit Road, LLC (20-1292272) and 2590 Water Park Drive, LLC (46-0657049).

# Article I

## Introduction

Debtors, NRP Lease Holdings, LLC ("NRP Holdings"), 8333 W 21st Street N, LLC, 1010 N. Webb Road, LLC, 8350 Lyra Drive, LLC, 5890 Scarborough Drive, LLC, 10735 E. Hwy 40, LLC, Adventure Holdings, LLC, 2780 SR16, LLC, 2400 Sheridan Drive, LLC, 1600 Stratford, LLC, 3660 East Franklin Street, LLC, 1944 Beach Boulevard, LLC, 4825 Blanding Boulevard, LLC, 3311 Capital Boulevard, LLC, 17717 Coit Road, LLC and 2590 Water Park Drive, LLC (collectively, the "Debtors"), propose this Amended Joint Plan of Reorganization (the "Plan") pursuant to the provisions of 11 U.S.C. § 1123.

# Article II

## Definitions

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in this Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in capitalized form that is not defined in this Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning ascribed to such term in the Bankruptcy Code or Bankruptcy Rules.  The rules of construction set forth in § 102 of the Bankruptcy Code shall apply in construction of this Plan.

   2.1    **Administrative Expense.**    Means (a) any cost or expense of administration of the Bankruptcy Case under § 503(b) of the Bankruptcy Code including, but not limited to, any such cost or expense constituting (1) an actual and necessary post-petition cost and expense of preserving the Estate or operating the business of the Debtors, (2) a post-petition cost, indebtedness or contractual obligation duty and validly incurred or assumed by the Debtors in the ordinary course of business, (3) a payment that is to be made under this Plan to cure defaults on executory contracts and unexpired leases, and (4) compensation or reimbursement of an expense to the extent allowed by the Bankruptcy Court under §§ 330(a) or 331 of the Bankruptcy Code, and (b) any fee or charge assessed against the Estate under 28 U.S.C. § 1930.

   2.2    **Allowed Claim.**    A right against the Debtors within the meaning of § 101(5) in respect of which a proof of claim has been filed with the Court within the period of limitation fixed by Rule 3003 or scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, and in either case as to which no objection as to allowance or amount thereof has been raised within the applicable period of limitation fixed by Rule 3001 or an order of the Court or local rule, or as to which any such objection has been

determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari is pending. Unless otherwise specified in the Plan or in a Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include (a) interest on the amount of such Claim accruing from and after the Filing Date, (b) punitive or exemplary damages or (c) any fine, penalty or forfeiture.

2.3     **Allowed Amount.**  The dollar amount in which a Claim is allowed.  No amount shall be allowed for or on account of punitive damages, penalties or post-petition interest on account of any Claim except as otherwise expressly specified in this Plan or provided by Final Order of the Bankruptcy Court.

2.4     **Allowed Interest.**  A right against the Debtors or an equity security holder of the Debtors in respect of which a proof of interest has been filed with Court within the applicable period of limitation fixed by Rule 3003 or scheduled in a list of equity security holders prepared or filed with the Court pursuant to Rule 1007(b) and in either case as to which no objection as to allowance or amount thereof has been raised within the applicable period of limitation fixed by Rule 3001 or an order of the Court or local rule, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari is pending.

2.5     **Allowed Secured Claim.**  An Allowed Claim against the Debtors for which a claimant asserts and is determined to hold a valid, perfected and enforceable lien, security interest or other interest of encumbrance in property in which the Debtors had an interest and which is not otherwise subject to avoidance or the equitable powers of the Bankruptcy Court under applicable bankruptcy law or non-bankruptcy law, but in any event only to the extent of the value, determined in accordance with § 506(a) of the Bankruptcy Code, of the claimant's interest in the Debtors' interest in the property. Allowed Secured Claim shall not include post-petition attorney fees and costs unless such fees and costs have been approved and allowed by Final Order prior to the Confirmation Date.

2.6     **Allowed Unsecured Claim.**  An Allowed Claim for which a claimant has not asserted or is determined by a Final Order not to hold an Allowed Secured Claim or a Claim entitled to priority under the Bankruptcy Code.

2.7     **Avoidance Actions**.  Any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtors, or their Estate under the Bankruptcy Code or applicable non bankruptcy law, including, without limitation, actions or remedies under §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

2.8     **Ballot.**  The form or forms distributed to claimants in impaired classes on which such persons may indicate the acceptance or rejection of the Plan.

**2.9    Bar Date.**  The date fixed by court order for filing proofs of claim or interests.  The Bar Date in this case is April 6, 2020.

**2.10    Causes of Action.**  All causes of action of any kind held at any time by the Debtors against any party or parties, including, without limitation, all causes of action held by the Debtors as of the Filing Date, all causes of action held by the Debtors arising after the Filing Date, and including any rights arising under §§ 362(b), 542, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code.

**2.11    Claim.**  A right against the Debtors within the meaning of § 101(5) of the Bankruptcy Code, including any right to payment or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtors in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal, secured or unsecured.

**2.12    Class.**  A category of Claims or Interests, as classified in this Plan.

**2.13    Confirmation Date.**  The date upon which the Bankruptcy Court, pursuant to § 1129 of the Bankruptcy Code, enters an order confirming the Plan in accordance with the appropriate provisions of Chapter 11 of the Bankruptcy Code.

**2.14    Confirmation Order.**  The order entered by the Bankruptcy Court confirming the Plan.

**2.15    Court.**  The United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, or any other court having original or appellate jurisdiction over this case.

**2.16    Debtors.**  NRP Holdings, 8333 W 21st Street N, LLC, 1010 N. Webb Road, LLC, 8350 Lyra Drive, LLC, 5890 Scarborough Drive, LLC, 10735 E. Hwy 40, LLC, Adventure Holdings, LLC, 2780 SR16, LLC, 2400 Sheridan Drive, LLC, 1600 Stratford, LLC, 3660 East Franklin Street, LLC, 1944 Beach Boulevard, LLC, 4825 Blanding Boulevard, LLC, 3311 Capital Boulevard, LLC, 17717 Coit Road, LLC and 2590 Water Park Drive, LLC.

**2.17    Disclosure Statement.**  The Joint Disclosure Statement filed with the Court, including exhibits and any supplements, amendments or modifications thereto, prepared pursuant to 11 U.S.C. § 1125(a) and 1126(b) and Rule 3018(b) for solicitation and acceptance of this Plan.

**2.18    Disputed Claim.**  A Claim that has not been allowed by a Final Order of the bankruptcy court as to which (a) a Proof of Claim has been filed with the Court, or is deemed filed under applicable law or order of the Court and (b) an objection to the allowance thereof has been or may be filed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Court and any such

objection has not been (1) withdrawn, (2) overruled or denied in whole or part by a Final Order of the Court or (3) granted in whole or part by a Final Order of the Court. For purposes of this Plan, a Claim that has not been allowed by a Final Order of the Court shall also be considered a "Disputed Claim", whether or not an objection has been or may be filed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the bankruptcy court, if (i) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (ii) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (iii) any corresponding Claim has been scheduled in the Schedules as disputed, Contingent or unliquidated, (iv) no corresponding Claim has been scheduled in the Schedules or (v) such Claim is reflected as unliquidated or Contingent in the Proof of Claim filed in respect thereof.

**2.19   Distribution Record Date.**   The record date for determining the entitlement of Holders of Claims to receive distributions under this Plan on account of Allowed Claims. The Distribution Record Date shall be five (5) business days before the Confirmation Date.

**2.20   Effective Date.**   The Effective Date of the Plan shall be the first day of the next month following the date upon which the Confirmation Order is no longer subject to rehearing, appeal or certiorari proceedings, or such other earlier date as the Debtors shall designate in a written notice filed with the Bankruptcy Court.

**2.21   Estate(s).**   The estate of each Debtor in these administratively consolidated Chapter 11 cases and, collectively, the estates of all Debtors in theses administratively consolidated cases, created pursuant to § 541 of the Bankruptcy Code.

**2.22   Executory Contract or Unexpired Lease.**   A contract or lease to which the Debtors are a party that is subject to assumption, assumption and assignment, or rejection under § 365 of the Bankruptcy Code.

**2.23   Final Order.**   An order or judgment of the Court that has not been reversed, modified, amended or stayed, and the time for appeal from which to seek review or certiorari or rehearing of which has expired, and as to which no appeal, review or rehearing are pending, and has become conclusive of all matters adjudicated thereby and is in full force and effect; provided, however, that the order or judgment shall not fail to be deemed a Final Order solely because of the possibility that a motion, pursuant to Federal Rule of Civil Procedure 60, which is incorporated by Rule 9024, may be filed with respect thereto.

**2.24   General Unsecured Claims.**   Any claim other than an Administrative Expense, Priority Claim or a Secured Claim and includes (a) the deficiency portion of an undersecured Claim, (b) the Claims of Insiders, and (c) any Claims for contract or lease rejection damages.

**2.25**   **Holder**.  Any Entity holding a Claim against the Debtors.

**2.26**   **Impaired Class**. A class of Claims or Interests which is not unimpaired under § 1124 of the Bankruptcy Code.

**2.27**   **Initial Distribution Date**.  The first business day of the month following the Effective Date.

**2.28**   **Person**.  An individual, partnership, corporation, joint-stock company, unincorporated company or association, business trust, limited partnership or other business entity.

**2.29**   **Petition Date**.  December 5, 2019, the date on which the Debtors filed their voluntary petitions for reorganization.

**2.30**   **Plan**.  This Joint Plan of Reorganization in its present form or as may be amended or supplemented.

**2.31**   **Priority Claims**.  Any pre-petition claim entitled to priority pursuant to § 507(a) of the Bankruptcy Code other than Administrative Expenses.

**2.32**   **Priority Tax Claim**.  A Claim arising under federal, state or local tax laws that is entitled to priority in payment pursuant to § 507(a)(8) of the Bankruptcy Code.

**2.33**   **Proof of Claim**.  Any proof of claim filed with the Court with respect to the Debtors pursuant to Rules 3001 or 3002.

**2.34**   **Proof of Interest**.  Any proof of interest filed with the Court with respect to the Debtors pursuant to Rule 3002.

**2.35**   **Property**.  The real and personal property (both tangible and intangible) owned by the Debtors.

**2.36**   **Recovery Actions**.  Means, collectively and individually, preference actions, fraudulent conveyance actions, rights of setoff and others claims or causes of action under Chapter 5 of the Bankruptcy Code and other bankruptcy or non-bankruptcy law.

**2.37**   **Rule**.  The Federal Rules of Bankruptcy Procedure, as adopted by the Supreme Court of the United States pursuant to 28 U.S.C. § 2075, and the Local Bankruptcy Rules as adopted by the bankruptcy court for the Middle District of Florida.

**2.38**   **Schedules**.  The schedules, as amended, of assets and liabilities, lists and statements of financial affairs and executory contracts filed with the Bankruptcy Court by the Debtors under Rule 1007.

**2.39    Secured Claim.**  The claim of any creditor who holds a lien, security interest or other security as that term is defined by § 101(49)(A) of the Bankruptcy Code and which has been properly perfected by the applicable law and determined in accordance with Section 506 of the Bankruptcy Code with respect to the property owned by the Debtors.

**2.40    Secured Creditor.**  Any creditor that is a holder of a Secured Claim.

**2.41    Undefined Term.**  A term used in the Plan and not defined herein but that is defined in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure has the meaning given to that term in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure.

**2.42    Unsecured Creditor.**  Any creditor that is a holder of an Unsecured Claim.

## Article III

## Construction

Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan, as the same may be amended, waived, or modified from time to time.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice-versa, and words denoting one gender shall include the other gender. As to contested matters, adversary proceedings, and other actions or threatened actions, this Plan and the Disclosure Statement shall not be construed as a stipulation or admission, but rather, as a statement made in settlement negotiations.

## Article IV

## Park Restructurings

On the Petition Date, the Debtors collectively owned and operated 14 family themed entertainment centers across the Eastern United States, all on leased premises. Though generally stable, revenues at each of the parks vary from month to month or year to year depending upon weather patterns.  Traditionally, losses at any particular park were covered by intercompany loans or advances from the Debtors' flagship location located at 1944 Beach Boulevard, Jacksonville Beach, Florida.  The Debtors have, however, lost their long-term leasehold interests for that location.  Having lost the safety net of the flagship location, the Debtors will need to close additional parks which

historically operate at a loss or at best, on a break-even basis.  The following parks have already been closed or have been identified for closure (the "Closed Parks"):

| Location | Entity | Closing Date |
|---|---|---|
| Jacksonville, Florida (Blanding Boulevard) | 4825 Blanding Boulevard, LLC | Closed |
| Columbus, Ohio (Polaris) | 8350 Lyra Drive, LLC | Closed |
| Mason, Ohio | 2590 Water Park Drive, LLC | Closed |
| Jacksonville Beach, Florida | 1944 Beach Boulevard, LLC | December 31, 2022 |
| Wichita, Kansas (Wichita East) | 1010 N. Webb Rd., LLC | October 31, 2022[2] |
| Independence, Missouri (Cool Crest) | 10735 E. Hwy 40, LLC | September 2022 |

The following parks will remain open following the Effective Date (the "Retained Parks"):

| Location | Entity |
|---|---|
| Raleigh, North Carolina | 3311 Capital Boulevard, LLC |
| Wichita, Kansas (Wichita West) | 8333 W 21st Street N, LLC |
| Dallas, Texas | 17717 Coit Road, LLC |
| Gastonia, North Carolina | 3660 East Franklin, LLC |
| Winston-Salem, North Carolina | 1600 Stratford Road, LLC |
| St. Augustine, Florida | 2780 SR 16, LLC |
| Columbus, Ohio (Magic Mountain; Columbus East) | 5890 Scarborough Drive, LLC |
| Tonawanda, New York (Buffalo) | 2400 Sheridan Drive, LLC |

---

[2]    Lease expires October 31, 2022.  Lessor has not committed to extension.  Will retain park if favorable renewal lease terms can be obtained.

## Article V

## Substantive Consolidation Compromise

The Debtors have historically operated as a single economic unit for administrative purposes, raising the specter of whether these cases should be substantively consolidated. This Plan therefore proposes, and its terms embody, a compromise of intercreditor issues relating to whether the liabilities and properties of the Debtors should be substantively consolidated for distributions under the Plan. These issues relate primarily to the following: (a) whether the elements necessary to obtain an order of substantive consolidation are satisfied in the Chapter 11 Case; (b) the value of the Debtors' Estates on an individual and a consolidated basis, and the proper method of determining such value; (c) whether the Estate of each Debtor should be treated separately for purposes of making payments to holders of Claims; (d) whether it is possible to attribute particular Claims asserted in the Chapter 11 Case to a specific Debtor; (e) the value to be accorded to guarantees issued by one Debtor in favor of another Debtor; (f) other issues having to do with the rights of certain Estates, Claims, or Classes of Claims vis-à-vis other Estates, Claims, or Classes of Claims; and (g) the amount and priority of Intercompany Claims and the potential voidability of certain intercompany transfers.

As a result of the compromise and settlement of substantive consolidation issues contained in the Plan, and *solely* for purposes of distributions under the Plan, except as otherwise provided in the Plan, (a) all property of the Estate of each Debtor shall be deemed to be property of the consolidated Estates; (b) all Claims against each Estate shall be deemed to be Claims against the consolidated Estates, any Proof of Claim filed against one or more of the Debtors shall be deemed to be a single claim filed against the consolidated Estates, and all duplicate Proofs of Claim for the same claim filed against more than one Debtor shall be deemed expunged; and (c) except as otherwise provided in the Plan, no distributions under the Plan shall be made on account of intercompany Claims. In the event one or more of the Debtors' Chapter 11 cases are converted to Chapter 7 or dismissed, creditors holding Claims against the converted or dismissed Estate solely shall receive no distribution pursuant to this Plan and shall have no rights to payment from the other Debtors.

The Plan shall not result in the merger or otherwise affect the separate legal existence of each Debtor, other than with respect to distribution rights under the Plan, and shall not be deemed to create joint liability of the Debtors for any injuries to persons or property occurring on the premises of any individual park. The compromise plan structure shall also not (a) affect valid, enforceable, and unavoidable Liens that would not otherwise be terminated under the Plan, except for Liens that secure a Claim that is eliminated by virtue of the plan structure and Liens against collateral that are extinguished by virtue of such plan structure; (b) have the effect of creating a Claim in a Class different from the Class in which a Claim would have been placed in the absence of such structure; or (c) affect the obligation of each of the Reorganized Debtors, pursuant

to Section 1930 of Title 28 of the United States Code, to pay quarterly fees to the Office of the United States Trustee until such time as each particular Debtor's case is closed.

The Plan is deemed to be a motion under §§ 105, 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 for approval of the compromise and settlement of the issues described above, and the confirmation of the Plan shall constitute approval of the motion by the Bankruptcy Court, and the Confirmation Order shall contain findings supporting and conclusions approving the compromise and settlement as fair and equitable and within the bounds of reasonableness.

## Article VI

## Classification and Treatment of Claims and Interests

As indicated in the preceding Article, the Debtors have historically operated administratively as a single economic enterprise. As a result, the creditor constituency is largely the same across all of the estates. This Plan and the distributions thereunder will therefore be administered as though the Debtors had been substantively consolidated. To this end, the table below summarizes the classification of Claims against and Interests in the Debtors for all purposes under this Plan, including voting, confirmation and distributions. In accordance with § 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, Professional Fee Claims and Priority Claims, and such Claims shall be paid in the manner described in Article VII below.

This Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class, other than for voting purposes, only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| Class | Creditor | Status | Voting Rights |
|-------|----------|--------|---------------|
| N/A | Administrative | N/A | No |
| N/A | Priority | N/A | No |
| 1 | Live Oak Banking Company (SBA Loan No. 201606146252) | Impaired | Yes |
| 2 | Live Oak Banking Company (SBA Loan No. 201606327524) | Impaired | Yes |
| 3 | American Express Bank, N.A. | Impaired | Yes |

| Class | Creditor | Status | Voting Rights |
|---|---|---|---|
| 4 | H. Betti Industries, Inc., doing business as Betson Enterprises | Impaired | Yes |
| 5 | Capital Merchant Services, LLC | Impaired | Yes |
| 6 | Kash Capital | Impaired | Yes |
| 7 | Gel Funding, LLC | Impaired | Yes |
| 8 | Green Capital Funding, LLC | Impaired | Yes |
| 9 | Forward Financing, LLC | Impaired | Yes |
| 10 | SPG Advance, LLC | Impaired | Yes |
| 11 | Ace Funding Source, LLC | Impaired | Yes |
| 12 | General Unsecured Claims | Impaired | Yes |
| 13 | Equity Interests | Unimpaired | No |

## Article VII

## Treatment of Administrative, Professional Fee and Priority Claims

Unless otherwise agreed by the Holder of an Administrative, Professional Fee or Priority Claim, such Claims shall be paid as follows:

**7.1** **Administrative Claims.** Subject to the provisions of §§ 328, 330(a) and 331 of the Bankruptcy Code, and except as provided below, the Debtors shall pay each Holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim in Cash: (i) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (ii) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter; (iii) at such later time as may be agreed upon by such Holder and the Debtors; or (iv) at such time and upon such terms as are set forth in a Final Order. Any party asserting an Administrative Claim must File such Claim on or before the Administrative Claim Bar Date.

**7.2    Professional Fee Claims.**  Professionals or other Persons asserting a Professional Fee Claim for services rendered before the Effective Date must file and serve on the Debtors, and such other Persons who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Professional Fee Claim no later than thirty (30) days after the Effective Date (the "Professional Fee Bar Date").  Professional Fee Claims shall be paid (i) on the date such Professional Fee Claim is Allowed or as soon as practicable thereafter; (ii) at such later time as may be agreed upon by such Holder and the Debtors; or (iii) at such time and upon such terms as are set forth in a Final Order.

**7.3    Ordinary Course Liabilities.**  Administrative Claims based on liabilities incurred by the Debtors in the ordinary course of their business, including Administrative Claims of governmental units for taxes, will, to the extent not paid during the pendency of the Chapter 11 Cases, be paid by the Debtors pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims, without any further action by the Holders of such Administrative Claims.  Holders of Administrative Claims based on liabilities incurred by the Debtors in the ordinary course of their business, including Administrative Claims of governmental units for taxes, will not be required to file or serve any request for payment of such Administrative Claims.

**7.4    PPP Loan.**  During the course of the reorganization, Debtors received $1,696,761 in funding from Harvest Small Business Finance, LLC (the "PPP Loans") under the provisions of the Payroll Protection Program ("PPP") established by the Coronavirus Aid, Relief, and Economic Security (CARES) Act, P.L. 116-136 (the "CARES Act"), which loans were granted administrative expense status pursuant to Court order dated April 2, 2020 [Docket No. 202].  The Debtors have applied for forgiveness of the PPP Loans and are awaiting a final decision from the United States Small Business Administration (the "SBA") regarding the request.

In the event the PPP Loans are not forgiven, the Chapter 11 cases for 8350 Lyra Drive, LLC and 2590 Water Park Drive, LLC will be dismissed with the SBA being entitled to collect the PPP Loans made to those entities from their assets solely, with the balance of the PPP Loans ($1,354,763 in total) being paid in sixty (60) monthly installments of $23,157.98 each, which payment includes 1% interest in accordance with the provisions of the Paychecks Protection Flexibility Act of 2020, P.L. 116-142.[3] Payments shall commence on the latter of (i) the Initial Distribution Date, or (ii) thirty (30) days after the request for loan forgiveness has been denied by Final Order following exhaustion of all appeals.

Harvest and the SBA have argued that the PPP Loans must be paid in full at confirmation.  The Debtors do not agree.  The Debtors will therefore reserve, and withhold from distribution to other creditors, $1,354,763 to pay the PPP Loans (the PPP Reserve") pending a determination, by Final Order(s), (i) that the PPP Loans will not be

---

[3]    This commitment is without prejudice to the Debtors' right and intention to appeal any denial of their request for loan forgiveness.

forgiven, and (ii) that the PPP Loans may not be paid over a sixty (60) month period as provided above.  If the PPP Loans are forgiven or the Debtors are authorized, by Final Order, to pay them over a sixty (60) month period, then the PPP Reserve shall be released for payment of creditor claims as provided herein.

**7.5    Payment of Statutory Fees.**  All fees payable pursuant to Article 1930 of Title 28 of the United States Code assessed against the Debtors' estate shall be paid in full by the Debtors as they become due and owing.

**7.6    Priority Tax Claims.**  Priority Claims, some of which are disputed, currently total $257,606.  Unless otherwise agreed among the Debtors and the Priority Tax Claim Holder, Priority Tax Claims, including those secured by statutory liens on the Debtors' property, shall be paid in full on or before the Initial Distribution Date.  Priority Claims subject to dispute or objection shall receive no distribution until such objection or dispute is resolved by Final Order.

**7.7    Other Priority Claims.**  Unless otherwise agreed among the Debtors and the Priority Claim Holder, Priority Claims, other than Priority Tax Claims, shall be paid in full in equal monthly installments of principal and interest over five (5) years.  Interest shall accrue on Priority Claims at the statutory rate, where applicable, or in the absence of a statutory rate, at the rate of 4.5% per annum.  Priority Claims subject to dispute or objection shall receive no distribution until such objection or dispute is resolved by Final Order.

## Article VIII

## Treatment of Impaired Classes

**Class 1.    Live Oak Banking Company (Loan No. 103660).**  Live Oak Banking Company ("Live Oak") holds a first priority lien and security interest in virtually all of the Debtors' assets, excepting those owned by 1944 Beach Boulevard, LLC, to secure an indebtedness of approximately $1,663,684.10 calculated as of June 30, 2022.  The lien is subordinate to the purchase money liens held by H. Betti Industries, Inc., doing business as Betson Enterprises ("Betson"), as to certain equipment, but is nonetheless considered to be fully secured.  Live Oak's Class 1 Claim is also cross-collateralized with the assets of each Debtor (excepting 1944 Beach Boulevard, LLC) and is secured on a pari-passu basis with Loan No. 103661 described in Class 2 below.

**b.    Payment of Live Oak's Allowed Class 1 Secured Claim.**  Live Oak's remaining Allowed Class 1 Secured Claim shall be amortized over a twenty (20) year period and paid in one hundred twenty (120) equal monthly instalments of principal and 4.5% interest totaling approximately $10,525.29, with the entire

unpaid balance being due and payable on the tenth anniversary of the Initial Distribution Date.[4]

All adequate protection payments received by Live Oak during the pendency of these Chapter 11 cases shall be applied to the Debtors' Class 1 and Class 2 plan obligations.

     **c.**     **Surrender of Collateral Located at Closed Parks**.  As additional parks are closed, the collateral securing Live Oak's Allowed Class 1 and Class 2 Secured Claims at each such closed location shall either be transferred to one or more of the Retained Parks or sold at auction with the net proceeds remitted to Live Oak, which proceeds shall be applied to the unpaid principal balance of Live Oak's Allowed Class 1 and Class 2 Secured Claims on a pro-rata basis.

     **d.**     **Contingent Principal Reduction**.  In the event the PPP Loans are forgiven or, alternatively, the Debtors are authorized by Final Order to repay the PPP Loans over a sixty (60) month period, the Debtors shall make a principal reduction payment to Live Oak of $250,000 from the PPP Reserve to be applied to its Class 1 Claim.  The balance of the debt will then be reamortized based on the original amortization schedule and paid over the remaining portion of the one hundred twenty (120) month Plan payment period.

     **e.**     **Retention of Lien**.  Live Oak shall retain its liens and security interests in the Debtors' assets (excluding 1944 Beach Boulevard, LLC) until its Class 1 and Class 2 Allowed Secured Claims are paid in full.

     **f.**     **Execution of New Loan Documents**.  If requested by Live Oak, the Debtors shall execute such loan and modification agreements as Live Oak may reasonably require to evidence or effectuate the Claim treatment outlined herein.

     **Class 2.**     **Live Oak Banking Company (Loan No. 103661)**.  Live Oak holds a first priority lien and security interest in virtually all of the Debtors' assets to secure an indebtedness of approximately $1,656,391.16, calculated as of June 30, 2022. The lien is subordinate to the purchase money liens held by Betson as to certain equipment, but is nonetheless considered to be fully secured.  Live Oak's Allowed Class 2 Claim is also cross-collateralized with the assets of each Debtor and secured on a pari-passu basis with Loan No. 103660 described in Class 1 above.

Live Oak's remaining Allowed Class 2 Secured Claim shall be amortized over a twenty (20) year period and paid in one hundred twenty (120) equal monthly instalments of principal and 4.5% interest totaling approximately $10,479.15, with the entire unpaid balance being due and payable on the tenth anniversary of the Initial Distribution Date. The collateral securing Live Oak's Allowed Class 2 Secured Claim shall be administered

---

[4]     Payments to be determined and loan balance fixed as of the Plan Effective Date.

and Live Oak's lien shall be retained (excluding 1944 Beach Boulevard, LLC), in the same manner as Live Oak's Allowed Class 1 Secured Claim.

In the event the PPP Loans are forgiven or, alternatively, the Debtors are authorized by Final Order to repay such loans over a sixty (60) month period, the Debtors shall make a principal reduction payment to Live Oak of $250,000 from the PPP Reserve to be applied to its Class 2 Claim.  The balance of the indebtedness will then be reamortized based on the original amortization schedule and paid over the remaining portion of the one hundred twenty (120) month Plan payment period.

**Class 3.      American Express Bank, N.A. ("American Express").** American Express holds a blanket lien and security interest in all of the Debtors' assets to secure an indebtedness of approximately $54,082.72.  American Express' Class 3 Allowed Secured Claim shall be deemed fully secured and shall be paid in monthly installments of principal and interest over five (5) years with 4.5% interest commencing on the Initial Distribution Date.  American Express shall retain its lien until paid in full.

**Class 4.      H. Betti Industries, Inc., doing business as Betson Enterprises ("Betson").**  Betson holds a first priority purchase money lien on certain equipment owned by the Debtors to secure advances under the following loan documents: (a) Secured Installment Promissory Note for $366,571.65, dated August 17, 2016; (b) Security Agreement, dated August 17, 2016; (c) UCC-1 Financing Statement No. 201608502919, filed on August 17, 2016; (d) Secured Promissory Note for $340,259.78, dated July 25, 2017; (e) Security Agreement, dated July 25, 2017; (f) UCC-1 Financing Statement No. 201701956088, filed on July 25, 2017; (g) UCC-1 Financing Statement No. 201701979932, filed on July 27, 2017 (adding additional collateral); (h) Secured Promissory Note for $437,183.24, dated February 4, 2019; (i) Security Agreement, dated February 4, 2019; (j) UCC-1 Financing Statement No. 201907810712, filed on February 15, 2019; (k) Secured Promissory Note for $220,000.00, dated June 25, 2019; (l) Security Agreement, dated June 25, 2019; and (m) UCC-1 Financing Statement No. 201909003555, filed on June 28, 2019.  The foregoing documents and all agreements related thereto, as amended, restated, supplemented, or otherwise modified from time to time, are referred to as the "Betson Loan Documents."

During the pendency of the Chapter 11 cases, the Debtors made monthly adequate protection payments to Betson in the amount of $15,000, which has reduced the indebtedness owed to Betson to $426,846.64, including $88,369.34 in attorney fees, all calculated as of May 11, 2022.  Betson's collateral is estimated to be worth $383,156, which shall constitute its Class 4 Allowed Secured Claim.  Betson's Class 4 Allowed Secured Claim shall be paid in monthly installments of $7,143.18 over 5 years which includes interest of 4.5% per annum.  The balance of Betson's Claim shall be treated as a Class 12 General Unsecured Claim.  The Debtors shall continue to make such monthly payments to Betson until such time as its Class 4 Allowed Secured Claim is paid in full.

Should Debtors sell any of their amusement parks that contain Betson's collateral, and such sale includes a transfer of any of Betson's collateral, which may also include

Case 3:19-bk-04607-JAF    Doc 1109    Filed 11/15/22    Page 46 of 79

parts, Debtors shall pay Betson the value of such individual collateral and parts from the sale proceeds in accordance with the values set forth on Exhibit A attached to the Stipulation filed with the Court on May 27, 2020 [Docket No. 181], in exchange for which Betson shall be deemed to have released its lien on such collateral. Should any park sale not include a transfer of collateral, the Debtors shall have the option of (i) returning the collateral associated with the park to Betson subject to an appropriate credit against the Prepetition Debt for the value of such collateral returned to Betson, or (ii) relocating the collateral to another park upon notice to Betson.

Betson shall retain its lien rights until the Allowed Class 4 Secured Claim is paid in full.  Betson shall also be entitled to exercise its remedies under Article 9 of the Uniform Commercial Code without the necessity of obtaining relief from the bankruptcy stay in the event of a post-confirmation default which is not timely cured.

**Class 5.**   **Capital Merchant Services, LLC ("CMS").**   CMS purports to hold a blanket lien on all assets owned by the Debtors to secure repayment of advances which it made under a Merchant Cash Advance agreement whereby CMS allegedly purchased certain prepetition receivables generated by the Debtors.  The Debtors contend that the loan is usurious and unenforceable under Florida law.  CMS' claim was therefore listed as unliquidated and disputed in the Debtors' schedules.  Pursuant to Bankruptcy Rule 3003(c)(2), CMS was obligated to file a proof of claim in this case prior to the Claims Bar Date.  It did not.  By virtue of § 502(b)(9) of the Bankruptcy Code, CMS' Claim is deemed disallowed and CMS is not therefore entitled to be treated as a creditor for purposes of voting or distribution.  Additionally, the value of the collateral securing the alleged loans is less than the amounts owed to prior lien holders.  CMS shall therefore receive no distribution in this case and, upon confirmation, the property of the estate will revest with the Debtors free and clear of any lien or security interest asserted by CMS.  CMS' UCC-1 Financing Statement shall therefore be deemed terminated and of no further effect as of the Effective Date of the Plan.

**Class 6.**   **Kash Kapital.**  Kash Kapital purports to hold a blanket lien on all assets owned by the Debtors to secure repayment of advances which it made under a Merchant Cash Advance agreement whereby Kash Kapital allegedly purchased certain prepetition receivables generated by the Debtors.  The Debtors contend that the loan is usurious and unenforceable under Florida law.  Kash Kapital's claim was therefore listed as unliquidated and disputed in the Debtors' schedules.  Pursuant to Bankruptcy Rule 3003(c)(2), Kash Kapital was obligated to file a proof of claim in this case prior to the Claims Bar Date.  It did not.  By virtue of § 502(b)(9) of the Bankruptcy Code, Kash Kapital's Claim is deemed disallowed and Kash Kapital is not therefore entitled to be treated as a creditor for purposes of voting or distribution.  Additionally, the value of the collateral securing the alleged loans is less than the amounts owed to prior lien holders. Kash Kapital shall therefore receive no distribution in this case and, upon confirmation, the property of the estate will revest with the Debtors free and clear of any lien or security interest asserted by Kash Kapital.  Kash Kapital's UCC-1 Financing Statement shall therefore be deemed terminated and of no further effect as of the Effective Date of the Plan.

**Class 7.**     **Gel Funding, LLC ("Gel Funding").**  Gel Funding has filed a secured Claim in these administratively consolidated Chapter 11 cases for $962,591.49, which Claim is purportedly secured by a blanket lien on all assets owned by the Debtors. The Debtors contend that (i) the loan is overstated, usurious and otherwise unenforceable under Florida law, and (ii) the value of the collateral securing the alleged loans is less than the amounts owed to prior lien holders, rendering Gel Funding's Claim unsecured by virtue of § 506(a) of the Bankruptcy Code.   Gel Funding disputes the Debtors' contentions.  The resolution of the foregoing disputes will be time consuming and costly, with uncertain results for both parties.   The Debtors and Gel Funding have therefore agreed to a compromise wherein Gel Funding shall receive (i) a lump sum payment of $165,000 on the Initial Distribution Date (the "Gel Settlement Payment"), and (ii) and an Allowed General Unsecured Claim for $400,000 which shall be entitled to share in the distribution to Class 12 General Unsecured Creditors on a pro-rata basis.  The Debtors have also agreed to release their Claim for return of approximately $140,000 in alleged preferential transfers made to Gel Funding in the ninety (90) days preceding the Petition Date as part of this compromise, with the release being effective upon the Effective Date of the Plan.  Upon receipt of the Gel Settlement Payment and the initial distribution to General Unsecured Creditors, Gel Funding shall release, and also be deemed to have released, any and all further Claims against the Debtors and any guarantors of the Debtors' indebtedness to Gel Funding; Gel Funding shall, however, be entitled to share in any additional distributions to Class 12 General Unsecured Creditors should the Debtors' PPP Loans be forgiven.   Gel Funding shall not retain its purported lien against the Debtors' assets and shall be required to deliver (i) UCC-3 releases of its purported lien, and (ii) satisfactions and releases, in recordable form, of any judgments it may hold against the Debtors' principals as a condition to it receiving a distribution under the Plan. The entry of the Confirmation Order shall be deemed an approval of the foregoing compromise in accordance with §§ 105, 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.

**Class 8.**     **Green Capital Funding, LLC ("GCF").**  GCF purports to hold a blanket lien on all assets owned by the Debtors to secure repayment of advances which it made under a Merchant Cash Advance agreement whereby GCF allegedly purchased certain prepetition receivables generated by the Debtors.  The Debtors contend that the loan is usurious and unenforceable under Florida law.  GCF's claim was therefore listed as unliquidated and disputed in the Debtors' schedules.  Pursuant to Bankruptcy Rule 3003(c)(2), GCF was obligated to file a proof of claim in this case prior to the Claims Bar Date.  It did not.  By virtue of § 502(b)(9) of the Bankruptcy Code, GCF's Claim is deemed disallowed and GCF is not therefore entitled to be treated as a creditor for purposes of voting or distribution.  Additionally, the value of the collateral securing the alleged loans is less than the amounts owed to prior lien holders.  GCF shall therefore receive no distribution in this case and, upon confirmation, the property of the estate will revest with the Debtors free and clear of any lien or security interest asserted by GCF. GCF's UCC-1 Financing Statement shall therefore be deemed terminated and of no further effect as of the Effective Date of the Plan.

**Class 9.** **Forward Financing, LLC ("Forward Financing").** Though Forward Financing has filed a general unsecured claim in these administratively consolidated Chapter 11 cases, it also filed a UCC-1 financing statement with the Florida Secured Transaction Registry asserting a blanket lien on all assets owned by the Debtors to secure repayment of advances which it made under a Merchant Cash Advance Agreement. The Debtors' contend that value of the collateral securing the alleged loans is less than the amounts owed to prior lien holders. Forward Financing shall therefore receive no distribution in these cases on account of its potential Secured Claim and, upon confirmation, the property of the estate will revest with the Debtors free and clear of any lien or security interest asserted or assertable by Forward Financing. Forward Financing's UCC-1 Financing Statement shall therefore be deemed terminated and of no further effect as of the Effective Date of the Plan. Forward Financing shall receive no distribution until its asserted lien is removed of record.

**Class 10.** **SPG Advance, LLC ("SPG").** SPG has filed a Secured Claim in these administratively consolidated Chapter 11 cases for $2,174,669.06, which Claim is purportedly secured by a blanket lien on all assets owned by the Debtors. The Debtors contend that (i) the loan is overstated, usurious and otherwise unenforceable under Florida law, and (ii) the value of the collateral securing the alleged loans is less than the amounts owed to prior lien holders, rendering SPG's Claim unsecured by virtue of § 506(a) of the Bankruptcy Code. SPG disputes the Debtors' contentions. The resolution of the foregoing disputes will be time consuming and costly, with uncertain results for both parties. The Debtors and SPG have therefore agreed to a compromise wherein SPG shall receive (i) a lump sum payment of $335,000 on the Initial Distribution Date (the "SPG Settlement Payment"), and (ii) and an Allowed General Unsecured Claim for $600,000 which shall be entitled to share in the distribution to Class 12 General Unsecured Creditors on a pro-rata basis. Upon receipt of the SPG Settlement Payment and the initial distribution to General Unsecured Creditors, SPG shall release, and also be deemed to have released, any and all further Claims against the Debtors and any guarantors of the Debtors' indebtedness to SPG; SPG shall, however, be entitled to share in any additional distributions to Class 12 General Unsecured Creditors should the Debtors' PPP Loans be forgiven. SPG shall not retain its purported lien against the Debtors' assets and shall be required to deliver (i) UCC-3 releases of its purported lien, and (ii) satisfactions and releases, in recordable form, of any judgments it may hold against the Debtors' principals as a condition to it receiving a distribution under the Plan. The entry of the Confirmation Order shall be deemed an approval of the foregoing compromise in accordance with §§ 105, 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019.

**Class 11.** **Ace Funding Source, LLC ("AFS").** AFS purports to hold a blanket lien on all assets owned by the Debtors to secure repayment of advances which it made under a Merchant Cash Advance agreement whereby AFS allegedly purchased certain prepetition receivables generated by the Debtors. The Debtors contend that the loan is usurious and unenforceable under Florida law. AFS' claim was therefore listed as unliquidated and disputed in the Debtors' schedules. Pursuant to Bankruptcy Rule 3003(c)(2), AFS was obligated to file a proof of claim in this case prior to the Claims Bar

Date. It did not. By virtue of § 502(b)(9) of the Bankruptcy Code, AFS' Claim is deemed disallowed and AFS is not therefore entitled to be treated as a creditor for purposes of voting or distribution. Additionally, the value of the collateral securing the alleged loans is less than the amounts owed to prior lien holders. AFS shall therefore receive no distribution in this case and, upon confirmation, the property of the estate will revest with the Debtors free and clear of any lien or security interest asserted by AFS. AFS' UCC-1 Financing Statement shall therefore be deemed terminated and of no further effect as of the Effective Date of the Plan.

     **Class 12.**    <u>**General Unsecured Claims.**</u>  Allowed Unsecured Claims will share pro rata in twenty (20) quarterly distributions of $25,000 each, with the first payment to be made within ninety (90) days of the Effective Date. In the event (i) the PPP Loans are forgiven, or (ii) the Debtors are permitted by Final Order to repay the PPP Loans over sixty (60) months following the entry of a final order determining the PPP Loans are ineligible for forgiveness, the Debtors shall make an additional distribution of $500,000 from the PPP Reserve to the Holders of Allowed Unsecured Claims at the time the next quarterly distribution to Class 12 Claim Holders is due.

     There shall be no distribution on account of any Disputed Claim until such objection or dispute is resolved by Final Order. In accordance with Section 10.1 of the Plan, the Debtors shall, however, reserve funds to make the proportionate distribution to such creditors until such time as all claim objections have been finally determined. All funds reserved on account of Disallowed Claims shall be distributed pro-rata to the holders of Allowed Unsecured Claims at the conclusion of the claim objection process. The Debtors may, in their sole discretion, delay making the initial distribution if they expect resolution of a Disputed Claim within a reasonable time.

     Pursuant to § 502(d) of the Bankruptcy Code, no payments shall be made to any entity from which property is recoverable under §§ 542, 543, 550 or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under §§ 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, unless such entity or transferee has paid the amount, or turned over any such property from which such entity or transferee is liable under §§ 522(i), 542, 543, 550 or 553 of the Bankruptcy Code. The Claim of any recipient of a payment avoidable under §§ 542, 543, 550 or 553 of the Bankruptcy Code who fails to pay or turnover the amount of the payment to the Debtors within 60 days of a judgment or order avoiding the transfer or requiring such turnover shall be extinguished and forever barred.

     **Class 13.**    <u>**Equity Interests.**</u>  All equity interests in the Debtors shall be retained, and all rights and privileges of the equity interest holders shall remain unaltered. This Class is unimpaired.

## Article IX

## Treatment of Executory Contracts and Unexpired Leases

During the pendency of the Chapter 11 cases, the Debtors either assumed or entered into new ground leases and utility bonds for the Retained Parks.  With respect to the remaining executory contracts and unexpired leases, Debtors will move to assume the following executory contracts and unexpired leases prior to the confirmation hearing:

a.  Adventure Holdings, LLC

| Lessor/Counterparty | Description |
|---|---|
| PepsiCo Sales, Inc. | Fountain Beverage Sales Agreement |
| Pitney Bowes Global Financial Services | Postage Meter |
| Rose & Ken, Inc. | Office Lease |
| Stephen L. Smith | Lease of Batting Cage Property (Gastonia) |
| Wells Fargo Bank | Equipment Lease (Bobcat Skidder) |

The following executory contracts and unexpired leases have been rejected, or will be rejected, prior to the Effective Date:

a.  Adventure Holdings, LLC

| Lessor/Counterparty | Description |
|---|---|
| Magic Ice USA, LLC | Equipment Lease (Portable Ice Rink) |
| 1st Colonial Business Solutions, Inc. | Business Debt Resolution and Settlement Agreement |

b.  8530 Lyra Drive, LLC

| Lessor/Counterparty | Description |
|---|---|
| International Fidelity Insurance | Utility Bond |

c.  4825 Blanding Boulevard, LLC

| Lessor/Counterparty | Description |
|---|---|
| International Fidelity Insurance | Utility Bond |
| Comcast Business | Internet Access |
| Johnson Controls Security Solutions, LLC | Security Contract |

d.  1944 Beach Boulevard, LLC

| Lessor/Counterparty | Description |
|---|---|
| International Fidelity Insurance | Utility Bond |
| Zeno Office Solutions | Copier Lease |

e.  2590 Water Park Drive, LLC

| Lessor/Counterparty | Description |
|---|---|
| International Fidelity Insurance | Utility Bond |
| Great American Financial Services | Copier Lease |
| Homeland Technology Group, LLC | Security/Fire Monitoring Contract |

f.  10735 E. Hwy 40, LLC

| Lessor/Counterparty | Description |
|---|---|
| International Fidelity Insurance | Utility Bond |

g.  2400 Sheridan Drive, LLC

| Lessor/Counterparty | Description |
|---|---|
| Great American Financial Services | Copier Lease |
| Homeland Technology Group, LLC | Security/Fire Alarm System |

| International Fidelity Insurance | Utility Bond |
|---|---|

Any Executory Contract or Unexpired Lease which is not expressly assumed shall be deemed rejected as of the entry of the Confirmation Order.  Any party to an Executory Contract or Unexpired Lease that claims damages from the rejection of such lease or contract must file a Claim for such damages within thirty (30) days of the rejection of such contract or lease or be forever barred from asserting such Claim.

To the extent any of the loan or receivables purchase agreements held by the holders of Claims in Class 5 through Class 11 are deemed to be Executory Contracts, such contracts shall be deemed rejected as of the Petition Date.

The Debtors do not believe that the Insurance Policies issued to, or insurance agreements entered into prior to the Petition Date, constitute Executory Contracts.  To the extent that such Insurance Policies or agreements are considered to be Executory Contracts, then, notwithstanding anything contained in this Plan to the contrary, this Plan will constitute a motion to assume such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption, pursuant to § 365(a) of the Bankruptcy Code. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy or agreement.

The Plan itself shall not expand the scope of, or alter in any other way, the rights and obligations of the Debtors' insurers under their policies, and the Debtors' insurers shall retain any and all  defenses to coverage that such insurers may have, including the right to contest or litigate with any party.

In the event any license granted to the Debtors by a government unit, and in effect immediately prior to the Effective Date, is considered to be an executory contract, and is not otherwise terminated or rejected by the Debtors, such license shall be deemed to have been assumed pursuant to § 365 of the Bankruptcy Code upon confirmation of the Plan.

Nothing contained herein shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have thirty (30) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

## Article X

## Means of Implementation

**10.1    Means of Implementation.**  The Plan will be implemented and funded from funds accumulated during the pendency of these cases and from the continued operation of the Retained Parks.  Inasmuch as the creditors constituency is largely the same across all Debtors, the distributions to creditors shall likewise be handled on a consolidated basis as though the cases had been substantially consolidated as provided in Article V above.  The proceeds from any avoidance actions, whether commenced by the Debtors or any authorized party in interest, shall be free and clear of all liens and will be utilized by the Debtors to help fund the Plan.

**10.2    Vesting of Assets.**  Except as otherwise provided in the Plan or the Confirmation Order, upon the Effective Date, all Assets, wherever situated, shall vest in the reorganized Debtors free and clear of all liens and encumbrances, excepting only those liens asserted or held by Live Oak, American Express and Betson.  Upon confirmation, the liens asserted by CMS, Kash Kapital, GCF, Forward Financing and AFS shall be deemed extinguished and of no further effect.  The liens held by Gel Funding and SPG shall be deemed extinguished and of no further effect upon the Debtors' compliance with the payment of the Gel Settlement Payment and the SPG Settlement Payment.

**10.3    Post-Confirmation Management.**  The Debtors shall continue to be managed post-petition by their present officer(s):

Henry P. Woodburn III          Manager/President

**10.4    Consolidated Cash Management.**    The Debtors have traditionally utilized a consolidated cash management system to process and pay ordinary operating expenses.    The Debtors will continue to utilize the consolidated cash management system, with Adventure Holdings administering payment of the debts of the affiliated Debtors.

**10.5    Court Authorization.**    The entry of the Confirmation Order shall constitute authorization for the Debtors to execute such further documents or to cause to be taken all actions necessary or appropriate to consummate and implement the provisions herein prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court.  All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the shareholders or directors of the Debtors.

**10.6    Exoneration of Certain Parties.**  Provided that the respective affiliates, officers, directors, representatives, attorneys, financial advisors, and agents of the

Debtors are not found by a court of competent jurisdiction to have failed to act in good faith, they shall not be liable to any Person with respect to any action, forbearance from action, decision, or exercise of discretion taken during the period from the Petition Date through the Effective Date in connection with: (a) the operation of the Debtors, (b) the implementation of any of the transactions provided for, or contemplated in, the Plan, or (c) the administration of the Plan, other than for willful misconduct or gross negligence. The Debtors and their respective affiliates, officers, directors, representatives, attorneys, financial advisors, and agents may rely upon the opinions and advice of counsel, certified public accountants and other experts or professional persons employed by the Debtors and such reliance shall presumptively establish good faith.

## Article XI

## Provisions Governing Distributions

**11.1    Disputed Claim Reserve.**

**i.        Establishment of Disputed Claim Reserve.**  The Debtors shall establish a separate Disputed Claim Reserve for Disputed Claims, to the extent any Disputed Claims exist.  The Debtors shall reserve distributions sufficient to provide Holders of Disputed Claims the treatment such Holders would be entitled to receive under this Plan if all such Disputed Claims were to become Allowed Claims.

**ii.       Maintenance of Disputed Claim Reserve.**  The Debtors shall hold distributions in the Disputed Claim Reserve in trust for the benefit of the Holders of Claims ultimately determined to be Allowed.  The Debtors shall make such distributions (net of any expenses, including any taxes relating thereto), as provided herein, as such Disputed Claims are resolved by a Final Order, and such distributions will be distributable in respect of such Disputed Claims as such distributions would have been distributable had the Disputed Claims been Allowed Claims as of the Effective Date.

**11.2    Supplemental Distributions.**  To the extent a Claim is Allowed after the Initial Distribution Date, the Debtors shall make the distributions required to be made on account of such Claim under this Plan no later than ninety (90) days after such Claim is Allowed.  No interest shall accrue or be paid on the unpaid amount of any distribution paid pursuant to this Article XI.

**11.3    Record Date for Distributions.**  Except as otherwise provided in a Final Order of the Bankruptcy Court or as otherwise stipulated by the Debtors, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Distribution Record Date.  The Debtors shall have

no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date.  In making any distribution with respect to any Claim, the Debtors shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the Proof of Claim filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that are known to the Debtors as applicable, as of the Distribution Record Date.

### 11.4    Delivery of Distributions.

      **i.**      **General Provisions.**  Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, distributions to the Holders of Allowed Claims shall be made by the Debtors. Except as otherwise provided herein, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Debtors.  Distributions to Holders of Allowed Claims will be made at the address of each Holder as set forth in the Schedules, unless superseded by the address set forth on Proofs of Claim Filed by such Holder.  Distributions under this Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth herein.  Neither the Debtors nor their respective professionals shall incur any liability whatsoever on account of any distributions under this Plan except for gross negligence, willful misconduct or fraud.

      **ii.**      **Undeliverable Distributions.**  If any distribution is returned as undeliverable, the Debtors may, in their discretion, make such efforts to determine the current address of the Holder of the Claim with respect to which the distribution was made as the Debtors deems appropriate, but no distribution to any Holder shall be made unless and until the Debtors have determined the then-current address of the Holder, at which time the distribution to such Holder shall be made to the Holder (without interest).  Amounts in respect of any undeliverable distributions made by the Debtors shall be returned to, and held in trust by, the Debtors until the distributions are claimed or are deemed to be unclaimed property under § 347(b) of the Bankruptcy Code.  The Debtors shall have the discretion to determine how to make distributions in the most efficient and cost-effective manner possible; *provided, however*, that their discretion may not be exercised in a manner inconsistent with any express requirements of this Plan.

      **iii.**      **Unclaimed Property.**  Except with respect to property not Distributed because it is being held in the Disputed Claim Reserve, distributions that are not claimed by the expiration of one year from the Initial Distribution Date or the date of a supplemental distribution applicable to such distribution, shall be deemed to be unclaimed property under § 347(b) of the Bankruptcy Code and shall vest or revest in the Debtors, and the Claims with respect to which those distributions are made shall be automatically canceled. After the expiration of such one (1) year period, the Claim of any Entity to those distributions shall be

discharged and forever barred.  Nothing contained in this Plan shall require the Debtors to attempt to locate any Holder of an Allowed Claim.

**11.5    Time Bar to Cash Payments by Check.**  Checks issued by the Debtors on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to this section shall be made directly to the Debtors by the Holder of the Allowed Claim to whom the check was originally issued.  Any claim in respect of such voided check shall be made in writing on or before the later of the first anniversary of the Initial Distribution Date or the date a supplemental distribution was made, as applicable, on which such check was issued.  After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of the Debtors as unclaimed property in accordance with § 347(b) of the Bankruptcy Code.  All costs for reissuance shall be borne by the Claim Holder.

**11.6    Compliance with Tax Requirements.**  In connection with making distributions under this Plan, to the extent applicable, the Debtors shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  Each Holder of an Allowed Claim that is to receive a distribution under this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.  The Debtors may withhold the entire distribution due to any Holder of an Allowed Claim until such time as such Holder provides the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Debtors to the appropriate authority.  If the Holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six (6) months from the date of first notification to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such Holder's distribution shall be treated as an undeliverable distribution.

**11.7    No Payments of Fractional Dollars or De Minimis Amounts.**  Notwithstanding any other provision of this Plan to the contrary, no payment of fractional dollars or amounts aggregating less than $25 shall be made pursuant to this Plan.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be required, the actual distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

**11.8    Interest on Claims.**  Except as specifically provided for in this Plan or the Confirmation Order, interest shall not accrue on Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim.  Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for postpetition interest or other similar charges.

**11.9    No Distribution in Excess of Allowed Amount of Claim.**  Notwithstanding anything to the contrary contained in this Plan, no Holder of an Allowed Claim shall receive in respect of that Claim any distribution in excess of the Allowed amount of that Claim.

**11.10    Single Distribution.**  In accordance with the substantive consolidation compromise set forth herein, creditors shall only be entitled to receive a single distribution on duplicative Claims filed against the individual Debtors under the terms of this Plan.  In the event one or more of the cases are converted to Chapter 7, Creditors holding Claims solely against the Chapter 7 Debtor will receive distributions from the Chapter 7 Estate(s) in accordance with the priorities established by § 507 of the Bankruptcy Code, without recourse against any of the other Estates.

**11.11    Settlement of Claims, Disputes and Litigation.**  After the Confirmation Date, the Debtors are authorized to resolve or settle any Claim objection, adversary proceeding, contested matter, or pending litigation, in their sole discretion, without further notice and without the necessity of obtaining Bankruptcy Court approval.  All of the aforementioned Claims and objection, estimation and resolution procedures are cumulative and not exclusive of one another.

**11.12    Expungement or Adjustment to Claims Without Objection.**  Any Claim that has been paid, satisfied or superseded may be expunged on the Claims register, and any Claim that has been amended may be adjusted thereon, in both cases without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

**11.13    Claims Paid by Third Parties.**  The Debtors shall reduce in full a Claim, and such Claim shall be disallowed without an objection to such Claim having to be filed and without further notice to, action, order, or approval of the Bankruptcy Court, to the extent the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor.  Further, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing annualized interest at the federal judgment rate on such amount owed for each Business Day after the two-week grace

period specified above until such amount is repaid.  The Debtors shall indemnify Henry P. Woodburn, III and Susan Woodburn for any Claims which they pay on the Debtors' behalf.

**11.14  Setoff and Recoupment.**  The Debtors may, but shall not be required to, set off against, or recoup from, any Claim and the distributions to be made pursuant to this Plan in respect thereof, any Claims or defenses of any nature whatsoever that the Debtors, the Estate or the Debtors may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim under this Plan shall constitute a waiver or release by the Debtors or the Estate(s), of any Claim or right of setoff or recoupment that any of them may have against the Holder of any Claim.

**11.15  Special Provision Regarding Unimpaired Claims.**  Except as otherwise provided in this Plan, nothing shall affect the Debtors' rights and defenses, both legal and equitable, with respect to any unimpaired Claim (including Claims that are Allowed pursuant to this Plan), including, without limitation, all rights with respect to the legal and equitable defenses to setoffs or recoupments against unimpaired Claims, and the Debtors' failure to object to such Claims in the Chapter 11 Case shall be without prejudice to the Debtors' right to contest or defend against such Claims in (i) any appropriate non-bankruptcy forum as if such Chapter 11 Case had not been commenced, or (ii) the Bankruptcy Court (such forum to be selected at the Debtors' option).

**11.16  Prepayment.**  The Debtors expressly reserve the right, in their sole discretions, to prepay, in full or in part, any obligation created pursuant to the Plan, and no interest shall accrue with respect to the prepaid portion of such obligation from and after the date of such prepayment. No fees or other charges shall be charged to the Debtors as a result of any such prepayment.

## Article XII

## Modification of the Plan

The Debtors may propose amendments or modifications of the Plan at any time prior to the hearing to consider confirmation of the Plan, with leave of the Court and upon such notice as the Court may require. After confirmation, the Debtors may, with approval of the Court, and so long as it does not materially or adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.

## Article XIII

## Discharge, Release and Effect of Confirmation

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN OR IN OBLIGATIONS  ISSUED PURSUANT TO THE PLAN (INCLUDING ANY DOCUMENTS EVIDENCING SUCH OBLIGATIONS) FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE DEBTORS, AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED, OR TO BE EXCULPATED, PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN (INCLUDING ANY DOCUMENTS EVIDENCING SUCH OBLIGATIONS), FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS OR THEIR SUCCESSORS AND ASSIGNS AND THEIR ASSETS AND PROPERTIES ANY OTHER CLAIMS BASED UPON ANY DOCUMENTS, INSTRUMENTS, OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED PRIOR TO THE EFFECTIVE DATE.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN OR IN OBLIGATIONS ISSUED PURSUANT TO THE PLAN (INCLUDING ANY DOCUMENTS EVIDENCING SUCH OBLIGATIONS), THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS IN THE PLAN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR THE RELEASEES OR ANY OF THEIR ASSETS OR PROPERTIES.  ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTORS SHALL BE SATISFIED AND RELEASED IN FULL.

THE PROSECUTION OR COLLECTION OF ANY CLAIMS AGAINST ANY GUARANTOR OF THE DEBTORS' INDEBTEDNESS, INCLUDING LEASE OBLIGATIONS, ARE HEREBY ENJOINED AND STAYED UNTIL SUCH TIME AS THE DEBTORS HAVE DEFAULTED IN THEIR PAYMENT OBLIGATIONS UNDER THIS PLAN OR ANY RELATED LEASE, BUT ONLY WITH RESPECT TO THE OBLIGATION THEN IN DEFAULT.  ANY STATUTE OF LIMITATIONS FOR ENFORCEMENT OF ANY CLAIMS AGAINST THE GUARANTORS OF THE DEBTORS' INDEBTEDNESS SHALL BE TOLLED DURING THE PENDENCY OF

THIS INJUNCTION.  ALL GUARANTEES OF THE DEBTORS' INDEBTEDNESS SHALL BE DEEMED SATISFIED AND EXTINGUISHED UPON COMPLETION OF THE DEBTORS' OBLIGATIONS TO THE PARTICULAR CREDITOR OR CLASS OF CREDITORS UNDER THE PLAN.

UNLESS OTHERWISE PROVIDED IN THE PLAN OR CONFIRMATION ORDER, ALL INJUNCTIONS OR STAYS IN EFFECT IN THE CHAPTER 11 CASE PURSUANT TO §§ 105 OR 362 OF THE BANKRUPTCY CODE OR ANY ORDER OF THE BANKRUPTCY COURT, AND EXTANT ON THE CONFIRMATION DATE (EXCLUDING ANY INJUNCTIONS OR STAYS CONTAINED IN THE PLAN OR THE CONFIRMATION ORDER) SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.  ALL INJUNCTIONS OR STAYS CONTAINED IN THE PLAN OR THE CONFIRMATION ORDER SHALL REMAIN IN FULL FORCE AND EFFECT IN ACCORDANCE WITH THEIR TERMS.

## Article XIV

### Exculpation

Notwithstanding anything contained in this Plan to the contrary, neither the Debtors not the Releasees identified above shall incur any liability to any person or Entity for any and all claims and Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, approving, disseminating, implementing, administering, confirming or consummating this Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with this Plan or any other act taken after the Petition Date or omitted to be taken in connection with or in contemplation of the transactions occurring in the Chapter 11 Case; *provided, however*, that the foregoing provisions shall have no effect on the liability of any Releasee that results from any act or omission that is determined in a Final Order to be solely due to such Releasee's own gross negligence or willful misconduct.

## Article XV

### Plan and Third-Party Injunctions/Releases

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS PLAN OR IN OBLIGATIONS   ISSUED PURSUANT TO THIS PLAN (INCLUDING ANY DOCUMENTS EVIDENCING SUCH OBLIGATIONS) FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE DEBTORS, AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY

CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED, OR TO BE EXCULPATED, PURSUANT TO THIS PLAN OR THE CONFIRMATION ORDER.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS PLAN OR IN OBLIGATIONS ISSUED PURSUANT TO THIS PLAN (INCLUDING ANY DOCUMENTS EVIDENCING SUCH OBLIGATIONS), FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS OR THEIR SUCCESSORS AND ASSIGNS AND THEIR ASSETS AND PROPERTIES ANY OTHER CLAIMS BASED UPON ANY DOCUMENTS, INSTRUMENTS, OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED PRIOR TO THE EFFECTIVE DATE.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS PLAN OR IN OBLIGATIONS ISSUED PURSUANT TO THIS PLAN (INCLUDING ANY DOCUMENTS EVIDENCING SUCH OBLIGATIONS), THE RIGHTS AFFORDED IN THIS PLAN AND THE TREATMENT OF ALL CLAIMS IN THIS PLAN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR THE RELEASEES OR ANY OF THEIR ASSETS OR PROPERTIES.

THE PROSECUTION OR COLLECTION OF ANY CLAIMS AGAINST ANY GUARANTOR OF THE DEBTORS' INDEBTEDNESS ARE HEREBY ENJOINED AND STAYED UNTIL SUCH TIME AS THE DEBTORS HAVE DEFAULTED IN THEIR PAYMENT OBLIGATIONS UNDER THIS PLAN. ANY STATUTE OF LIMITATIONS FOR ENFORCEMENT OF ANY CLAIMS AGAINST THE GUARANTORS OF THE DEBTORS' INDEBTEDNESS SHALL BE TOLLED DURING THE PENDENCY OF THIS INJUNCTION. ALL GUARANTEES OF THE DEBTORS' INDEBTEDNESS SHALL BE DEEMED SATISFIED AND EXTINGUISHED UPON COMPLETION OF THE DEBTORS' OBLIGATIONS TO THE PARTICULAR CREDITOR OR CLASS OF CREDITORS UNDER THE PLAN.

UNLESS OTHERWISE PROVIDED IN THIS PLAN OR CONFIRMATION ORDER, ALL INJUNCTIONS OR STAYS IN EFFECT IN THE CHAPTER 11 CASE PURSUANT TO §§ 105 OR 362 OF THE BANKRUPTCY CODE OR ANY ORDER OF THE BANKRUPTCY COURT, AND EXTANT ON THE CONFIRMATION DATE (EXCLUDING ANY INJUNCTIONS OR STAYS CONTAINED IN THIS PLAN OR THE CONFIRMATION ORDER) SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE. ALL INJUNCTIONS OR STAYS CONTAINED IN THIS PLAN OR THE CONFIRMATION ORDER SHALL REMAIN IN FULL FORCE AND EFFECT IN ACCORDANCE WITH THEIR TERMS.

## Article XVI

## Maintenance of Causes of Action

**16.1    Vesting of Causes of Action.**  Except as otherwise provided in this Plan or Confirmation Order, in accordance with § 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtors may hold against any Entity shall revest upon the Effective Date in the Debtors.  Except as otherwise provided in this Plan or Confirmation Order, after the Effective Date, the Debtors shall have the exclusive right, but not the obligation, to institute, prosecute, abandon, settle or compromise any Causes of Action, in accordance with the terms of this Plan and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Case.

**16.2    Preservation of All Causes of Action Not Expressly Settled or Released.**  Unless a Cause of Action against a Holder of a Claim or other Entity is expressly waived, relinquished, released, compromised or settled in this Plan or any Final Order (including the Confirmation Order), the Debtors expressly reserve such Cause of Action for later adjudication (including, without limitation, Causes of Action not specifically identified or described in this Plan or elsewhere or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata,* collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan or Confirmation Order, except where such Causes of Action have been released in this Plan or any other Final Order (including the Confirmation Order).  In addition, the Debtors expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which one or more of the Debtors is a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

## Article XVII

## Effective Date of Plan

The Effective Date of the Plan shall be the first day of the next month following the date upon which the Confirmation Order is no longer subject to rehearing, appeal or certiorari proceedings, or such other earlier date as the Debtors shall designate in a written notice filed with the Bankruptcy Court.

## Article XVIII

## Conditions Precedent to Occurrence of Effective Date

The Effective Date shall not occur unless and until the following conditions have been satisfied or waived by the Debtors (a) the Confirmation Order shall have been entered, in form and substance acceptable to the Debtors, and (b) the Confirmation Order shall have become a Final Order.

## Article XIX

## Miscellaneous

**19.1    Objection Deadline.** As soon as practicable, but in no event later than ninety (90) calendar days after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders thereof and the United States Trustee for the Middle District of Florida.

**19.2    Further Action:** The Debtors are authorized and directed to execute and deliver all documents and take and cause to be taken all action necessary and appropriate to execute and implement the provisions of this Plan.

**19.3    No Attorneys' Fees.** Unless otherwise agreed by the Debtors, no pre- or post-petition attorneys' fees shall be paid with respect to any Claim or Interest except as specified herein or as Allowed by a Final Order of the Bankruptcy Court prior to the Confirmation Date.

**19.4    Further Assurance.** If at anytime Debtors shall consider or be advised that any further releases or assurances are reasonably necessary or desirable to carry out the provisions hereof and the transactions contemplated herein, the Claim or Interest Holder whose action is required shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions of this Plan.

**19.5    Employment of Professionals.** After confirmation, the Debtors are authorized to employ such professionals as they deem appropriate and to compensate them without the further approval of the Court.

**19.6    Enforcement.** In the event it becomes necessary to initiate litigation to enforce the terms of this Plan, the non-prevailing party shall pay the court costs and attorney's fees of the prevailing party in such enforcement action including, without limitation, all such fees and expenses incurred in negotiations, at trial, on appeal, and in bankruptcy court.

**19.7    Section 1146 Exemption:** Pursuant to § 1146(c) of the Bankruptcy Code, the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, or the revesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated by the Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

**19.8    Withdrawal of Plan.**    At the option of the Debtors, this Plan may be withdrawn at any time prior to the entry of the Confirmation Order. If such option is timely and properly exercised, the withdrawn Plan would be null and void and of no legal effect and the Cases shall continue and be administered in accordance with the Bankruptcy Code.

**19.9    Discrepancies.** In the event of any discrepancy between the terms of this Plan and the Disclosure Statement, the terms of this Plan shall control.

**19.10    Default by the Debtors.**    All payments required hereunder shall have an automatic grace period from payment of fourteen (14) days. A default by the Debtors occurs only when a breach of the terms of this Plan is not cured within thirty (30) days of the receipt by the Debtors of notice of such breach delivered after the expiration of the grace period.  The notice must be written and from the party affected by the breach. A breach that is not timely cured shall be a default under the Plan.  Unless the Debtors have defaulted under the Plan, no Person may proceed with litigation against the Debtors, Debtors' property, its shareholders or guarantors.

**19.11    Automatic Stay.**  The automatic stay imposed by § 362 of the Bankruptcy Code will remain effective until the Effective Date, at which time the injunction of Article XV shall replace such stay.

**19.12    Continued Operations.**    The Debtors plan to continue to operate and manage the Retained Parks prior to and after the Confirmation Date. Upon confirmation, all assets of the Debtors' bankruptcy estate shall vest in the Debtors subject only to any valid lien, security interest, mortgage or other interest in property as provided for in this Plan.

**19.13    Non-Material Modifications.**  The Debtors may, with the approval of the Bankruptcy Court and without notice to holders of Claims or equity Interests, correct any nonmaterial defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable. The Debtors may undertake such nonmaterial modification pursuant to this section insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any interest holder who has not accepted in writing the modification.

**19.14    Notices.**    Any notice hereunder shall be in writing, and if by telegram, telex or facsimile, shall be deemed to have been given when sent, and if mailed shall be

deemed to have been given three days after the date when sent by registered or certified mail, postage prepaid, and addressed as follows:

>       To the Debtors:        Mr. Henry P. Woodburn III
>                              NRP Lease Holdings, LLC, et al.
>                              2315 Beach Boulevard, Suite 203
>                              Jacksonville Beach, Florida 32250

**19.15    Successors and Assigns.**  The duties, rights and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Persons.

## Article XX

## Retention Of Jurisdiction

**20.1    Retention of Jurisdiction.** Pursuant to §§ 1334 and 157 of Title 28 of the United States Bankruptcy Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to these Chapter 11 cases and the Plan, for the purposes of §§ 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)    To hear and determine any and all objections to or applications concerning the allowance, classification, priority, compromise, estimation, or payment of any Claim or Equity Interest;

(b)    To hear and determine any and all applications for payments of fees and expenses made by any Professional pursuant to §§ 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under the Bankruptcy Code, and any and all objections thereto;

(c)    To hear and determine pending applications for the rejection, the assumption, or the assumption and assignment of unexpired leases and executory contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect of the assumption or rejection of any Executory Contract or Unexpired Lease;

(d)    To hear and determine any and all adversary proceedings, applications, or contested matters, including any remands or appeals;

(e)    To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or

enforcement of the Plan or in connection with the enforcement of any remedies made available under the Plan;

(f)     To liquidate any disputed, contingent, or unliquidated Claims;

(g)     To adjudicate the Debtors' entitlement to forgiveness of their PPP Loans or to deem such loans forgiven;

(h)     To take such action and enter such order as are necessary to remove or extinguish the liens purportedly held by CMS, Kash Capital, Gel Funding, GCF, Forward Finance, SPG or AFC of record;

(i)     To ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are accomplished as provided in the Plan;

(j)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(k)     To enter and implement such orders as may be necessary or appropriate in furtherance of confirmation, implementation, or consummation of the Plan;

(l)     To enable the reorganized Debtors to prosecute any and all proceedings which may be brought to set aside liens or encumbrances and to recover any transfers, assets, properties or damages to which the Debtors or the reorganized Debtors may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws, including causes of action, controversies, disputes and conflicts between the Debtors or the reorganized Debtors and any other party, including, but not limited to, any objections to claims, suits for avoidance and recovery of preferences or fraudulent transfers, and suits for equitable subordination of Claims;

(m)     To consider any modification of the Plan pursuant to § 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(n)     To enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan and the transactions contemplated under the Plan;

(o)     To hear and determine any other matter not inconsistent with the Bankruptcy Code and Title 28 of the United States Code that may arise in connection with or related to the Plan; and

(p)     To enter a final decree closing the Chapter 11 Cases.

**20.2**   **Abstention and Other Courts.**   If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to these Chapter 11 cases, Section 20.1 of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

DATED this ___1st___ day of September, 2022.

**NRP LEASE HOLDINGS, LLC, et al.**

By _____

Henry "Hank" Woodburn
President and CEO

-and-

**THAMES | MARKEY**

*/s/ Richard R. Thames*
By _____

Richard R. Thames

Florida Bar Number 0718459
50 North Laura Street, Suite 1600
Jacksonville, Florida 32202
(904) 358-4000
(904) 358-4001 (Facsimile)
rrt@thamesmarkey.law

Attorneys for the Debtors

# Exhibit "B"

**NRP Lease Holdings, LLC, et al.**
**Class 12 - General Unsecureds Listing**
11/7/2022 9:56

| | Allowed Unsecured Claim | Unsecured Distribution Percentage |
|---|---|---|
| 1st Colonial Business Solutions | 0.00 | 0.00% |
| 8 Till Late Air Conditioning & Heat, Inc. | 262.94 | 0.01% |
| A Greener Image | 400.00 | 0.01% |
| A&F Elevator Company, Inc. | 740.00 | 0.02% |
| A.L.M. | 221.85 | 0.01% |
| ABS Money Systems | 425.84 | 0.01% |
| Absolute Protection, Inc. | 948.00 | 0.03% |
| Absolute Protection, Inc. | 2,137.61 | 0.06% |
| Ace Funding Source, LLC | 0.00 | 0.00% |
| AD Pages | 8,166.00 | 0.24% |
| Ad Pages | 0.00 | 0.00% |
| Advance Commercial Pest Service | 1,819.00 | 0.05% |
| Advance Commercial Pest Service | 1,113.02 | 0.03% |
| Advance Commercial Pest Services | 749.00 | 0.02% |
| Advantage Signs | 456.89 | 0.01% |
| Adventure Holdings, LLC | 0.00 | 0.00% |
| AEP American Electric | 21.40 | 0.00% |
| Aire-Master of Collin County | 0.00 | 0.00% |
| Airgas USA, LLC | 2,408.00 | 0.07% |
| Airgas USA, LLC | 206.72 | 0.01% |
| Airgas USA, LLC | 587.57 | 0.02% |
| Airgas USA, LLC | 1,093.48 | 0.03% |
| Alan Eugene Miles | 517.50 | 0.02% |
| Alfous Ferrier | 0.00 | 0.00% |
| All About Care Heating & Air Inv | 239.65 | 0.01% |
| Allied Mechanical, Inc. | 1,123.00 | 0.03% |
| Allied Universal Corp. | 9,172.25 | 0.27% |
| Allmetal Recycling, LLC | 2,893.14 | 0.09% |
| Alphamedia | 1,500.00 | 0.04% |
| American Changer | 70,590.40 | 2.09% |
| American Express Bank, FSB | 54,082.72 | 0.00% |
| American Kart  Manufacturing, LLC | 4,248.52 | 0.13% |
| American Kart Manufacturing, LLC | 215.98 | 0.01% |
| American Kart Manufacturing, LLC | 1,705.25 | 0.05% |
| American Kart Manufacturing, LLC | 1,926.30 | 0.06% |
| American Kart Manufacturing, LLC | 3,686.05 | 0.11% |
| American Kart Manufacturing, LLC | 478.18 | 0.01% |
| American Kart Manufacturing, LLC | 9,036.79 | 0.27% |
| American Kart Manufacturing, LLC | 551.16 | 0.02% |
| American Red Cross | 342.00 | 0.01% |
| Animaland | 5,235.95 | 0.15% |
| Antoinette Gerard | 0.00 | 0.00% |
| Apartment Fire Extinguisher Service | 358.93 | 0.01% |
| Apartment Fire Extinguisher Service | 386.75 | 0.01% |
| ARC3 Gases | 561.76 | 0.02% |

| | | |
|---|---|---|
| ASCAP | 587.38 | 0.02% |
| ASCAP | 2,771.80 | 0.08% |
| Atmos Energy Corporation | 187.08 | 0.01% |
| Atomic | 1,200.00 | 0.04% |
| Automatic Sprinkler of Texas | 0.00 | 0.00% |
| Avon Grips | 1,028.28 | 0.03% |
| Avon Grips | 3,287.01 | 0.10% |
| Avon Grips | 556.15 | 0.02% |
| Avon Grips | 1,502.69 | 0.04% |
| Avon Grips | 3,597.58 | 0.11% |
| Avon Grips | 494.92 | 0.01% |
| Avon Grips | 3,157.57 | 0.09% |
| Avon Grips | 649.60 | 0.02% |
| Avon Grips | 2,082.01 | 0.06% |
| Avon Grips | 2,002.47 | 0.06% |
| Avon Grips | 4,406.44 | 0.13% |
| B&C Communications | 228.77 | 0.01% |
| Ballou Radio | 3,000.00 | 0.09% |
| BBVA USA | 456,390.83 | 13.49% |
| Beaches Visitors MAP | 600.00 | 0.02% |
| Betson Enterprises | 43,690.64 | 1.29% |
| Beverage Carbonation Service | 210.49 | 0.01% |
| BFS Capital | 0.00 | 0.00% |
| Big Fat Coupon Book | 2,000.00 | 0.06% |
| BMI | 1,802.50 | 0.05% |
| Bob's Backflow & Plumbing, Inc. | 370.00 | 0.01% |
| Boer Brothers Restaurant Services | 5,154.20 | 0.15% |
| Brand the World | 0.00 | 0.00% |
| Brask Enterprises, Inc. | 0.00 | 0.00% |
| Brenntag-Mid South, Inc. | 12,551.57 | 0.37% |
| Brinks Incorporated | 2,480.60 | 0.07% |
| Broadcast Music, Inc. | 790.70 | 0.02% |
| C3 Computer Corp. | 750.00 | 0.02% |
| C3 Media Group, Inc. | 14,980.00 | 0.44% |
| Cadence Academy | 0.00 | 0.00% |
| Capital Merchant Services, LLC | 0.00 | 0.00% |
| Careworks Consultants, Inc. | 975.00 | 0.03% |
| Carrot-Top Industries, Inc. | 606.45 | 0.02% |
| CDW Direct | 3,616.43 | 0.11% |
| Center Edge | 3,753.24 | 0.11% |
| Charles Morris | 703.93 | 0.02% |
| Chase Bank | 925.07 | 0.03% |
| Cheapest Tree Work | 550.00 | 0.02% |
| Cinottis Bakery & Sandwich Shop | 640.50 | 0.02% |
| Cintas Corporation | 254.38 | 0.01% |
| CIT Bank, N.A. | 0.00 | 0.00% |
| City Electric | 837.71 | 0.02% |
| City Electric | 1,568.77 | 0.05% |
| City Electric Supply | 2,589.42 | 0.08% |
| City of Columbus Treasurer | 425.00 | 0.01% |
| City of Dallas Utility | 0.00 | 0.00% |

| | | |
|---|---:|---:|
| City of Gastonia Electric & Water | 3,326.56 | 0.10% |
| City of Independence Health Dept. | 350.00 | 0.01% |
| City of Jacksonville | 1,673.75 | 0.05% |
| City of Jacksonville, FL | 510.00 | 0.02% |
| Clear Channel Outdoor | 19,500.00 | 0.58% |
| Coca-Cola | 18,226.35 | 0.54% |
| Cogent, Inc. d/b/a Lee Mathews | 0.00 | 0.00% |
| Coit Road Properties, LLC | 140,681.00 | 4.16% |
| Columbus Baseball Team, Inc. | 1,200.00 | 0.04% |
| Columbus City Treasure | 5,835.00 | 0.17% |
| Columbus Dept. Sewer & Water | 0.00 | 0.00% |
| Columbus Fasteners Corp. | 1,055.65 | 0.03% |
| Comcast | 11,990.52 | 0.35% |
| Comcast Spotlight | 250.00 | 0.01% |
| Commercial Parts & Service, Inc. | 207.96 | 0.01% |
| Commercial Parts & Service, Inc. | 2,354.82 | 0.07% |
| Commercial Trade Services, LLC | 2,834.75 | 0.08% |
| Competitive Conceptz, Inc. | 1,053.00 | 0.03% |
| Consolidated Utilities | 932.50 | 0.03% |
| Consolidated Utilities, Inc. | 556.50 | 0.02% |
| Continental Batteries | 0.00 | 0.00% |
| Core Cashless, Inc. | 0.00 | 0.00% |
| Cox Media, LLC | 9,000.00 | 0.27% |
| Crenshaw Hoods | 400.00 | 0.01% |
| Cristl Booth | 240.00 | 0.01% |
| Crown Services, Inc. | 9,591.67 | 0.28% |
| Crystal Springs | 261.76 | 0.01% |
| Curtis Media Group, Inc. / WPLW | 1,912.50 | 0.06% |
| Curtis Media Group, Inc. / WQDR FM | 2,295.00 | 0.07% |
| Dagher Printing | 3,427.87 | 0.10% |
| Dagher Printing for All | 3,683.11 | 0.11% |
| Damians | 1,842.84 | 0.05% |
| Damians | 391.00 | 0.01% |
| David Lies Plumbing, Inc. | 1,389.34 | 0.04% |
| Daycom Media, Inc. | 625.00 | 0.02% |
| DeFords Fuel & Oil | 494.98 | 0.01% |
| Deltronic Labs, Inc. | 264.06 | 0.01% |
| Dippin' Dots, Inc. | 7,648.33 | 0.23% |
| Direct Services HVAC | 308.38 | 0.01% |
| DirecTV | 221.31 | 0.01% |
| DirecTV | 897.95 | 0.03% |
| Discount Helium of Dallas | 0.00 | 0.00% |
| Discover Tec | 3,575.00 | 0.11% |
| Dish | 238.42 | 0.01% |
| Draft Cargoways India Private Limi | 2,465.60 | 0.07% |
| Duke Energy | 289.43 | 0.01% |
| Duke Energy | 1,969.09 | 0.06% |
| Duval County Tax Collector | 777.53 | 0.02% |
| Dynamite Discounts | 1,925.00 | 0.06% |
| Earthlink Windstream | 0.00 | 0.00% |
| Ecolab Food Safety Specialties | 435.83 | 0.01% |

| | | |
|---|---:|---:|
| Ecolab Institutional | 216.37 | 0.01% |
| Electric Motor Technologies, Inc. | 1,689.83 | 0.05% |
| Elite Fire Services | 357.00 | 0.01% |
| Elite Fire Services | 1,929.05 | 0.06% |
| Empire State Exterminating, Inc. | 516.55 | 0.02% |
| Engine Solutions, Inc. | 1,087.73 | 0.03% |
| Entertainment | 1,500.00 | 0.04% |
| Evergy | 27,769.19 | 0.82% |
| Evergy Kansas Central, Inc. f/k/a Westar Energy, Inc. | 9,974.77 | 0.29% |
| Expense Reduction Analysts | 6,480.50 | 0.19% |
| Experience Columbus | 406.85 | 0.01% |
| Family Publications | 395.00 | 0.01% |
| Farco Plastics Supply, Inc. | 700.88 | 0.02% |
| Federal Express | 310.35 | 0.01% |
| Ferguson Electric | 2,622.20 | 0.08% |
| Fire Protection Services | 548.00 | 0.02% |
| First Coast Fire & Safety Equipment | 396.97 | 0.01% |
| First Coast Fire & Safety Equipment | 206.51 | 0.01% |
| First Coast High School | 444.67 | 0.01% |
| Fisher Nets, Inc. | 685.85 | 0.02% |
| Fisher Nets, Inc. | 708.81 | 0.02% |
| Fisher Nets, Inc. | 376.40 | 0.01% |
| Five Star Mechanical, Inc. | 0.00 | 0.00% |
| FL Dept. of Revenue | 3,217.04 | 0.10% |
| FL Dept. of Revenue | 434.88 | 0.01% |
| FL Dept. of Revenue | 601.81 | 0.02% |
| Florida Pump Service | 6,187.81 | 0.18% |
| Florida State CROP | 659.56 | 0.02% |
| Foley Rental Store | 7,717.56 | 0.23% |
| Forward Financing, LLC | 46,222.25 | 1.37% |
| Franklin Blvd. Property, LLC | 28,976.87 | 0.86% |
| Fred Miller | 240.00 | 0.01% |
| Frontier Communications | 0.00 | 0.00% |
| Gator Encounter | 1,025.00 | 0.03% |
| Gel Funding, LLC | 400,000.00 | 11.82% |
| General Sign Service Corp. | 4,585.53 | 0.14% |
| General Sign Service Corp. | 6,056.93 | 0.18% |
| Global Reach Media | 409.00 | 0.01% |
| Gold Medal | 330.62 | 0.01% |
| Gold Medal | 276.79 | 0.01% |
| Gold Medal Products | 885.74 | 0.03% |
| Gold Medal Products | 1,470.43 | 0.04% |
| Gold Medal Products | 1,035.10 | 0.03% |
| Gold Medal Products | 868.81 | 0.03% |
| Gold Medal-Jacksonville, Inc. | 319.77 | 0.01% |
| Gordon Food Service, Inc. | 1,876.94 | 0.06% |
| Grainger | 641.40 | 0.02% |
| GreatAmerica Financial Services Co. | 7,236.91 | 0.21% |
| Greater City of Cincinnati Water | 36,070.23 | 1.07% |
| Greater Raleigh Chamber | 520.00 | 0.02% |
| Green Capital Funding, LLC | 0.00 | 0.00% |

| | | |
|---|---|---|
| Greenhouse Beverage Air | 1,045.00 | 0.03% |
| H&H Products | 3,088.80 | 0.09% |
| Hampel Oil | 2,557.19 | 0.08% |
| Hampel Oil Distributors, Inc. | 1,091.58 | 0.03% |
| Hap Group | 206.18 | 0.01% |
| Happ Controls, Inc. | 260.98 | 0.01% |
| Happ Controls, Inc. | 269.11 | 0.01% |
| Hardball Creative | 15,177.33 | 0.45% |
| Harrison Landscape & Design | 9,391.78 | 0.28% |
| Hartley's Products | 4,574.54 | 0.14% |
| Hayward Distributing Co. | 6,766.85 | 0.20% |
| Hayward Distributing Company | 6,772.94 | 0.20% |
| Henry P. and Susan S. Woodburn III | 0.00 | 0.00% |
| Herc Rentals | 637.32 | 0.02% |
| Hercules Fence Co. | 1,050.00 | 0.03% |
| Home Depot | 321.56 | 0.01% |
| Home Depot Credit Services | 1,966.59 | 0.06% |
| Home Paramount Pest Control | 285.00 | 0.01% |
| Homeland Technology Group, LLC | 1,348.36 | 0.04% |
| HSP EPI Acquisition | 2,500.00 | 0.07% |
| Hubbard Group 2060 Ditigal | 19,685.00 | 0.58% |
| Hudson Energy | 0.00 | 0.00% |
| IAAPA | 2,440.00 | 0.07% |
| ICEE Company, The | 2,316.86 | 0.07% |
| Ideal Software | 771.00 | 0.02% |
| Ideal Software | 825.00 | 0.02% |
| Ideal Software | 717.00 | 0.02% |
| Ideal Software Systems, Inc. | 1,315.00 | 0.04% |
| Ideal Software Systems, Inc. | 879.00 | 0.03% |
| Ideal Software Systems, Inc. | 360.50 | 0.01% |
| Ideal Software Systems, Inc. | 1,656.00 | 0.05% |
| Ideal Software Systems, Inc. | 894.00 | 0.03% |
| Ideal Software Systems, Inc. | 954.00 | 0.03% |
| Ideal Software Systems, Inc. | 1,173.00 | 0.03% |
| iHeartMedia | 2,692.80 | 0.08% |
| iHeartMedia | 2,490.50 | 0.07% |
| iHeartMedia, Inc. | 11,475.00 | 0.34% |
| Impact LawnCare | 2,880.00 | 0.09% |
| Innovative Concepts | 360.64 | 0.01% |
| Instantwhip Foods | 342.22 | 0.01% |
| Internal Revenue Service | 0.00 | 0.00% |
| Interstate Battery Systems of Columbus | 358.65 | 0.01% |
| J&J Amusement, Inc. | 356.53 | 0.01% |
| J&J Amusements | 6,684.16 | 0.20% |
| J&J Amusements, Inc. | 5,862.91 | 0.17% |
| J&J Amusements, Inc. | 1,579.56 | 0.05% |
| J&J Amusements, Inc. | 1,285.73 | 0.04% |
| J&J Amusements, Inc. | 2,256.24 | 0.07% |
| J&J Amusements, Inc. | 2,812.00 | 0.08% |
| J&J Amusements, Inc. | 2,059.54 | 0.06% |
| Jackson County Collector | 0.00 | 0.00% |

| | | |
|---|---:|---:|
| Jacksonville Chamber of Commerce | 200.00 | 0.01% |
| Jacksonville Moms Blog, LLC | 1,600.00 | 0.05% |
| Jacksonville Regional Chamber | 800.00 | 0.02% |
| Jacksonville Regional Chamber of Commerce | 200.00 | 0.01% |
| Jamie & Brandon Cade Thompson | 0.00 | 0.00% |
| Jax Ice Machine Equipment Lease Co. | 688.28 | 0.02% |
| Jax4Kids.com | 1,600.00 | 0.05% |
| JEA | 0.00 | 0.00% |
| Johnson Controls | 2,755.11 | 0.08% |
| Johnson Controls | 418.06 | 0.01% |
| Johnson Controls Security Solutions, LLC | 10,656.63 | 0.31% |
| Johnson Controls Security Solutions, LLC | 11,047.79 | 0.33% |
| Johnston Allison & Hord | 590.00 | 0.02% |
| Jonmar Services, Inc. | 8,000.00 | 0.24% |
| K&K Janitorial Service | 716.94 | 0.02% |
| Kansas Gas Service | 639.51 | 0.02% |
| Kash Capital | 0.00 | 0.00% |
| Kimbrough Fire Extinguisher | 427.30 | 0.01% |
| KL Installations | 972.60 | 0.03% |
| Klosterman Baking Company | 2,056.58 | 0.06% |
| KMXV-FM | 2,805.00 | 0.08% |
| Lake Home Inspection Services, Inc. | 650.00 | 0.02% |
| Lampton Welding Supply, Inc. | 306.99 | 0.01% |
| Lampton Welding Supply, Inc. | 819.37 | 0.02% |
| Lazer Runner | 5,157.13 | 0.15% |
| Lazer Runner | 12,267.57 | 0.36% |
| Lazer Runner | 2,567.66 | 0.08% |
| Lazer Runner | 2,169.26 | 0.06% |
| Lazer Runner | 2,398.49 | 0.07% |
| Leslie's Pool Supplies | 562.88 | 0.02% |
| Leslie's Swimming Pool Supplies | 1,280.19 | 0.04% |
| Liberty HVAC | 701.04 | 0.02% |
| Lifeguard Store, Inc., The | 11,866.09 | 0.35% |
| Lifeguard Store, Inc., The | 10,218.20 | 0.30% |
| Liquid Environmental Solutions | 0.00 | 0.00% |
| Local Flavor | 414.62 | 0.01% |
| Local Waste Services, LLC | 410.76 | 0.01% |
| Local Waste Services, LLC | 759.03 | 0.02% |
| Logan Heating & Air Conditioning | 4,036.88 | 0.12% |
| Louisburg Nursery | 3,263.76 | 0.10% |
| Magic Ice USA, Inc. | 173,352.81 | 5.12% |
| Mahoney Environmental | 200.00 | 0.01% |
| Manhattan Life Assurance Co. of America | 501.48 | 0.01% |
| Marvin Henderson | 810.00 | 0.02% |
| Master Air, LLC | 2,150.66 | 0.06% |
| Master Air, LLC | 886.77 | 0.03% |
| Master Pitching Machine, Inc. | 3,218.10 | 0.10% |
| Matt Loeb | 85,000.00 | 2.51% |
| McDaniel Company, Inc. | 795.50 | 0.02% |
| McWherter Petroleum | 2,805.06 | 0.08% |
| Meltwater News US, Inc. | 894.67 | 0.03% |

| | | |
|---|---|---|
| Merchant Services | 0.00 | 0.00% |
| MetLife | 0.00 | 0.00% |
| Mid-America Sales, Inc. | 0.00 | 0.00% |
| Millen Oil Company | 1,148.74 | 0.03% |
| Mint Magazine | 1,092.00 | 0.03% |
| Mint Magazine | 726.00 | 0.02% |
| Mint Magazine | 2,532.37 | 0.07% |
| Mission Restaurant Supply | 211.09 | 0.01% |
| Money Pages | 20,991.00 | 0.62% |
| Morris Publishing Group | 2,300.00 | 0.07% |
| Mountain Sweets Distributing | 9,201.44 | 0.27% |
| Murphy Cleaning Supplies | 3,091.29 | 0.09% |
| NAAG Tag | 220.18 | 0.01% |
| Nassau Candy South, LLC | 4,766.90 | 0.14% |
| National Fuel Gas Distribution Corporation | 354.88 | 0.01% |
| National Premium, Inc. | 251.29 | 0.01% |
| National Retail Properties, LP | 0.00 | 0.00% |
| National Ticket Co. | 3,817.22 | 0.11% |
| National Ticket Co. | 947.32 | 0.03% |
| National Ticket Co. | 3,953.25 | 0.12% |
| National Ticket Co. | 4,811.01 | 0.14% |
| National Ticket Co. | 6,750.47 | 0.20% |
| National Ticket Co. | 5,405.10 | 0.16% |
| NC Dept. of Revenue | 22.00 | 0.00% |
| NC Dept. of Revenue | 15.31 | 0.00% |
| NC Dept. of Transportation | 1,200.00 | 0.04% |
| NexAir, LLC | 632.94 | 0.02% |
| Next Level Lawn Care, LLC | 570.00 | 0.02% |
| Northeast Florida Heating & Air | 2,500.00 | 0.07% |
| Northeast Florida Heating & Air | 2,341.21 | 0.07% |
| Nu Line Signs | 293.48 | 0.01% |
| Nu Line Signs | 1,145.95 | 0.03% |
| NuCo2, Inc. | 4,467.38 | 0.13% |
| NuCo2, Inc. | 1,423.75 | 0.04% |
| NuCo2, LLC | 536.81 | 0.02% |
| NuCo2, LLC | 1,235.28 | 0.04% |
| Office Depot, Inc. | 1,099.26 | 0.03% |
| OH Dept. of Taxation | 0.00 | 0.00% |
| Ohio Mulch Landscape Supply | 2,029.92 | 0.06% |
| Oilfield Shelters, Inc. | 893.97 | 0.03% |
| Olentargy Heritage | 200.00 | 0.01% |
| Orkin Commercial Service | 674.70 | 0.02% |
| Otis Elevator Co. | 5,245.99 | 0.16% |
| Pandora Media, Inc. | 7,977.67 | 0.24% |
| Panic Lighting | 662.09 | 0.02% |
| Patton Termite & Pest | 325.74 | 0.01% |
| Paul Murray Oil, Inc. | 4,871.35 | 0.14% |
| Paul Murray Oil, Inc. | 1,756.66 | 0.05% |
| Pepsi | 994.97 | 0.03% |
| Pepsi | 450.02 | 0.01% |
| Pepsi Bottling | 709.79 | 0.02% |

| | | |
|---|---:|---:|
| Pepsi Bottling Group | 1,105.90 | 0.03% |
| Pepsi Bottling Ventures, LLC | 4,944.76 | 0.15% |
| Pepsi-Cola | 1,373.40 | 0.04% |
| Pepsi-Cola | 535.15 | 0.02% |
| Pepsi-Cola of Raleigh | 0.00 | 0.00% |
| Performance Foodservice | 0.00 | 0.00% |
| PG Vending | 2,176.00 | 0.06% |
| Pitney Bowes Global | 1,084.26 | 0.03% |
| Pitney Bowes Global Financial, LLC | 309.32 | 0.01% |
| Pitney Bowes Postage by Phone | 200.00 | 0.01% |
| Pitney Bowes, Inc. Global | 1,310.32 | 0.04% |
| Post House, LLC | 1,500.00 | 0.04% |
| Postage By Phone | 1,108.49 | 0.03% |
| PPG Architectural Coating | 1,471.25 | 0.04% |
| Premier Companies | 1,420.52 | 0.04% |
| Premier Painting, LLC | 759.82 | 0.02% |
| PrintResources | 269.98 | 0.01% |
| Pro Tec Powder Coating | 214.00 | 0.01% |
| Professional Landscaping Service | 4,880.00 | 0.14% |
| Progressive Heating & Air Service | 4,900.54 | 0.14% |
| Progressive Service Co. | 1,416.51 | 0.04% |
| Protect One Security | 249.62 | 0.01% |
| Protection One Alarm Monitoring | 645.05 | 0.02% |
| Protection One Alarm Monitoring | 1,846.09 | 0.05% |
| Raven Lawn Maintenance | 3,400.00 | 0.10% |
| ReachUSA | 7,474.63 | 0.22% |
| Rebco Electric | 1,863.27 | 0.06% |
| Red Star Oil Co. | 3,057.21 | 0.09% |
| Reinhart Food Service, LLC | 5,788.10 | 0.17% |
| Reinhart FoodService, LLC | 3,375.85 | 0.10% |
| Reinhart FoodService, LLC | 8,035.05 | 0.24% |
| Republic Services | 610.66 | 0.02% |
| Republic Services | 880.71 | 0.03% |
| Rhode Island Novelty | 13,458.43 | 0.40% |
| Rhode Island Novelty | 8,084.34 | 0.24% |
| Rhode Island Novelty | 6,797.08 | 0.20% |
| Rhode Island Novelty | 15,137.05 | 0.45% |
| Rhode Island Novelty | 886.72 | 0.03% |
| Rhode Island Novelty | 5,056.95 | 0.15% |
| Rhode Island Novelty | 13,007.60 | 0.38% |
| Rhode Island Novelty Corp. | 13,485.54 | 0.40% |
| Rhode Island Novelty Corp. | 13,560.84 | 0.40% |
| Rhode Island Novelty Corp. | 17,415.91 | 0.51% |
| Rhode Island Novelty Corp. | 6,440.82 | 0.19% |
| Rhode Island Novelty Corp. | 12,667.69 | 0.37% |
| Rhode Island Novelty Corp. | 14,511.55 | 0.43% |
| Rhode Island Novelty Corp. | 25,540.40 | 0.75% |
| Ricoh Corporation | 220.31 | 0.01% |
| Rising Tide Landscapes | 950.00 | 0.03% |
| Rite-Aid Corporation f/k/a Eckerd Corp. | 0.00 | 0.00% |
| Rodger's Plumbing DFWKT Service | 4,958.17 | 0.15% |

| | | |
|---|---|---|
| Roma Foodservice Cistar Corp. | 0.00 | 0.00% |
| Ryan Herco Flow Solutuions | 7,585.95 | 0.22% |
| S2Technology | 640.00 | 0.02% |
| Safety-Kleen - CleanHarbors | 3,623.38 | 0.11% |
| SalesForce.com | 469.06 | 0.01% |
| Sam's Club / GECRB | 2,417.84 | 0.07% |
| Sanarak Paper & Popcorn | 201.36 | 0.01% |
| Savko Plastic Pipe | 277.28 | 0.01% |
| Sawyer / TECO Gas of the Beaches | 1,025.98 | 0.03% |
| Secure SI | 11,970.31 | 0.35% |
| Security Equipment, Inc. | 673.63 | 0.02% |
| SESAC | 991.56 | 0.03% |
| SESAC, Inc. | 924.60 | 0.03% |
| Shaffer Distributing Co. | 295.98 | 0.01% |
| Shapell's, Inc. | 561.05 | 0.02% |
| SharedLabs, Inc. | 0.00 | 0.00% |
| Shelton's Water Refining | 0.00 | 0.00% |
| Sherwin-Williams | 550.20 | 0.02% |
| Sherwin-Williams Co. | 5,219.88 | 0.15% |
| Sherwin-Williams Co. | 1,579.47 | 0.05% |
| Sidney Simmons, Esq. | 1,102.50 | 0.03% |
| Silco Fire & Security | 1,886.71 | 0.06% |
| Sinclair Broadcast Group WSYX | 10,553.61 | 0.31% |
| SJS Communications | 520.86 | 0.02% |
| Slush Puppie Tri-State, Inc. | 1,156.10 | 0.03% |
| Smith Hulsey & Busey | 0.00 | 0.00% |
| Soaring Eagle, Inc. | 13,665.03 | 0.40% |
| Sonbert Security Systems, Inc. | 228.00 | 0.01% |
| SonicWall | 1,737.00 | 0.05% |
| Sonny Bryan's Smokehouse | 12,923.09 | 0.38% |
| Southern Waters Co., Inc. | 823.90 | 0.02% |
| Spectrum Business | 484.16 | 0.01% |
| Spectrum Business | 321.75 | 0.01% |
| Spectrum Reach Media | 10,807.75 | 0.32% |
| Spectrum Reach Media | 6,932.60 | 0.20% |
| SPG Advance, LLC | 600,000.00 | 17.73% |
| Spire Missouri, f/k/a Missouri Gas Energy | 541.76 | 0.02% |
| St. Johns County Tax Collector | 578.18 | 0.02% |
| St. Michael Academy | 475.83 | 0.01% |
| Staples Business Advantage | 273.04 | 0.01% |
| Star Booth NextTech | 204.97 | 0.01% |
| Star-Booth Nextech Industries | 739.90 | 0.02% |
| Stens Part Company | 178.00 | 0.01% |
| Stens Part Company | 1,163.11 | 0.03% |
| Stephen L. Smith | 0.00 | 0.00% |
| Steve Brewer | 284.32 | 0.01% |
| Stillwater Commercial Services, Inc. | 743.88 | 0.02% |
| Suburban Propane | 1,517.40 | 0.04% |
| Summer One | 845.11 | 0.02% |
| Sunbelt Rentals | 2,452.76 | 0.07% |
| Sunbelt Rentals | 3,400.73 | 0.10% |

| | | |
|---|---|---|
| Sunbelt Rentals | 246.55 | 0.01% |
| Sunshine Lighting, Inc. | 952.55 | 0.03% |
| Superior Pool Products | 607.74 | 0.02% |
| Superior Pool Products, LLC | 331.01 | 0.01% |
| Superior Rents | 3,898.32 | 0.12% |
| Supplyworks | 4,763.24 | 0.14% |
| Sysco Food Service | 9,012.68 | 0.27% |
| Sysco Jacksonville, Inc. | 17,085.80 | 0.50% |
| Sysco Raleigh, LLC | 2,417.52 | 0.07% |
| T.H.E. Insurance Company | 0.00 | 0.00% |
| Talk of the Town Coupons | 4,142.00 | 0.12% |
| TDA Landscaping, LLC | 568.63 | 0.02% |
| TELE-VAC Environmental | 2,660.00 | 0.08% |
| Temp-Con, Inc. | 246.24 | 0.01% |
| Terminix | 701.46 | 0.02% |
| Thomson Reuters | 420.00 | 0.01% |
| Thyssenkrupp Elevator Corp. | 2,718.50 | 0.08% |
| TIAA Bank | 5,349.73 | 0.16% |
| Time Spectrum Reach | 11,320.67 | 0.33% |
| Time Warner Cable Spectrum Reach | 2,255.02 | 0.07% |
| TimePayment Corp. | 0.00 | 0.00% |
| Titan Pest Service | 0.00 | 0.00% |
| Toshiba Financial Services | 0.00 | 0.00% |
| Town of Tonawanda | 0.00 | 0.00% |
| Trinity Catholic Schools | 608.00 | 0.02% |
| Triotech | 0.00 | 0.00% |
| Trugreen | 398.50 | 0.01% |
| Tundra Restaurant Supply | 444.21 | 0.01% |
| TX Comptroller of Public Accounts | 0.00 | 0.00% |
| U.S. Lawns of Columbus | 946.00 | 0.03% |
| United Medical Industries Corp. | 100.50 | 0.00% |
| Uremet Corp. | 1,240.23 | 0.04% |
| Valpak of Jacksonville | 8,868.00 | 0.26% |
| Velvet Ice Cream | 557.60 | 0.02% |
| Village Key & Alarm, Inc. | 834.21 | 0.02% |
| Visit Florida | 365.00 | 0.01% |
| Visit Jacksonville & Beaches | 1,287.91 | 0.04% |
| Visit Wichita | 235.00 | 0.01% |
| Visit Wichita | 470.00 | 0.01% |
| Warren County Health District | 1,462.00 | 0.04% |
| Waste Industries | 1,146.25 | 0.03% |
| Water Safety Products, Inc. | 3,727.16 | 0.11% |
| Website Design & Development | 281.25 | 0.01% |
| Wedges & Ledges, Inc. | 2,201.00 | 0.07% |
| Wedges / Ledges, Inc. | 6,349.43 | 0.19% |
| Wedges / Ledges, Inc. | 4,534.63 | 0.13% |
| Wedges / Ledges, Inc. | 4,472.21 | 0.13% |
| Wedges / Ledges, Inc. | 8,901.28 | 0.26% |
| Wedges / Ledges, Inc. | 2,201.00 | 0.07% |
| Weller Welding Co., Inc. | 301.05 | 0.01% |
| Wells Fargo Bank, N.A. | 0.00 | 0.00% |

| | | |
|---|---:|---:|
| Wells Fargo Financial Services, LLC | 0.00 | 0.00% |
| Whirley Drink Works | 13,829.96 | 0.41% |
| Wichita Eagle, The | 795.00 | 0.02% |
| Wichita Regional Chamber of Commerce | 478.00 | 0.01% |
| Wildlife Control Co., Inc., The | 466.52 | 0.01% |
| Wilson | 3,853.31 | 0.11% |
| Wilson Sporting Good | 3,746.16 | 0.11% |
| Windy Creations | 1,256.39 | 0.04% |
| Windy Creations | 1,675.59 | 0.05% |
| Windy Creations | 471.75 | 0.01% |
| Wittek Golf Supply | 115.01 | 0.00% |
| WJXX-TV | 6,179.50 | 0.18% |
| World Waterpark Association | 429.00 | 0.01% |
| Wristband Specialty | 423.44 | 0.01% |
| Wristband Specialty, Inc. | 751.44 | 0.02% |
| WSYX | 0.00 | 0.00% |
| WTLV | 22,414.29 | 0.66% |
| WYRK-FM | 6,585.00 | 0.19% |
| Zamperla | 0.00 | 0.00% |
| **Totals** | **3,438,182.99** | **100.00%** |